Parker, C. J.
Upon the equity of this case there can be no question. Indeed, the claim of the heirs of Ebenezer Mayo, if they can be presumed to know the state of the transaction between their father and the respondent, partakes so much of fraud, that it would be lamentable that the strict principles of law should give them success. Their father appears to have discovered no disposition to take advantage of the deed from the committee having been made to him alone. He claimed no more than his just proportion of the land, and did not disturb Libby in the enjoyment of the part he had purchased ; probably supposing that the deed of the committee would enure to the use and benefit of Libby as well as himself, according to the certificate of Ballard, which is referred to in that deed. Nor can there be a doubt, that the committee intended that their deed should operate as a confirmation to all those who had an inchoate title to the lot by virtue of the resolve of June 19th, 1795.
But it is contended that the title of the Commonwealth was, for the first time, conveyed by the deed of the committee in 1805 ; and, that Ebenezer Mayo being the sole releasee, the title of the whole lot became vested in him, the deed being conclusive evidence of the rights of all the persons claiming an interest in the land ; and the two cases of Lambert & al. vs. Carr,(2) and French vs. Harlow,(3) are pressed upon us, as having definitively settled this case.
We are entirely satisfied with the decision of those two cases, and are not disposed to disturb them in the slightest degree. But we are convinced that the principles adopted in them are inapplicable to the case at bar.
The resolve, under which the committee acted, with respect to the claims of settlers in the town of Bangor, is materially * different from that which was passed respecting Hamp- [ * 343 ] den; and the facts, upon which the decision of the Court was founded in those cases, vary essentially from the facts upon which this action is to be determined.
The resolve relating to Bangor, passed March 5th, 1801, provides that all the settlers in that town, who actually settled before the 1st of January, 1784, should be entitled to deeds of their respective lots of one hundred acres each, upon paying, &c. And then the committee for the sale of eastern lands are required to cause the respective lota to be surveyed, &c.
In that resolve there are no words of grant, release, or confir *300 matioñ, but a prospective provision for a deed, alter a survey is taken.
So that, as the settlers were mere intruders upon the public lands, no title whatever passed to them until they obtained their deeds ; and in this view it certainly was clear that the deed of the committee, as to the right of settlers, and as to conflicting claims of boundaries, was conclusive ; and none but the government could avoid the deed on account of any error in the allotments, or any imposition upon the committee in order to obtain the deed.
There is also a material difference in the terms and legal effect of the deed given by the committee to the settlers in Bangor, and that which is relied upon by the heirs of Mayo in the case at bar. The former was a deed of grant and confirmation, thus passing to the grantees all the right of the Commonwealth in a lot of land described. The latter is a naked release and quitclaim, which, according to sound legal principles, passes no right whatever to land, of which another person is in the actual visible possession, claiming a right. And as, at the time the deed was executed and delivered to Mayo, Libby was in the actual possession, by fences, buildings, and improvements, of the part he defends in his plea, holding the same distinct from the residue of the lot, by virtue of a title derived from the original settler, and by the resolve of 1795, nothing passed by the deed to Mayo of the part so occupied.†
[.* 344 ] * But it is far from being clear, that, with respect to the settlers in the town of Hampden, any deed from the committee for the' sale of eastern lands was necessary to perfect their title, or indeed that the committee was authorized or required to give any such deed. And, if this should be found to be the case, the title cannot be prejudiced by an unnecessary or unauthorized act of that committee.
It may also be further remarked, that the committee in their deed expressly refer to the certificate of Ephraim Ballard, the surveyor, who was appointed under said resolve. Now Ballard certifies that he had laid out this lot to Ebenezer Mayo and Simon Smith, the assignees of Edward Smith, the first settler, and he designates the proportion of land to which Mayo was entitled. The committee likewise express their intention to convey conformably to the certificate of Ballard.
Under these circumstances, the release of the Commonwealth, executed by the committee to Mayo alone, certainly ought not and cannot operate upon more than he claimed and had in his possession ; *301 and, although Simon Smith, or his assigns, may take nothing under the deed, yet they probably are safe in the hands of the Commonwealth, if a deed should be found to be necessary. It is sufficient for this issue, that the heirs of Mayo are entitled to no more under the deed than they have a just and equitable claim to.
The words of the resolve of the 19th of January, 1795, respecting the settlers in Hampden, before January, 1784, are, “ that there be, and hereby is, released to such settler, his heirs and assigns,” &c., and each lot is to be held in severalty ; and no provision whatever is made for a deed to be given by the committee. Now the Commonwealth certainly had the power, by a legislative act, without any deed by its agent, to part with all its right in any of its lands ; and Simon Smith, under whom the respondent claims, being in actual possession of the tract defended, at the date of that resolve, his title became complete by the passing of the resolve. For whether the condition of payment, and of causing the survey to be made, be precedent or subsequent, * is immaterial ; since the gov- [ * 345 ] ernment has received the money, although out of time, and a survey has been made, and a plan returned and accepted, accord_ng to the provisions of the resolve.
The only difficulty, if any, in the construction of the resolve is, that, as the lot of one hundred acres released was to be laid out so as best to include the improvements of each settler, conflicting claims might exist, which could not be adjusted but by some common authority. But the resolve provides that a surveyor shall be appointed to run out the different lots, and give a certificate to each settler ; and there is a further provision, that, if any dispute should arise relative to the doings of the surveyor, it should be settled by arbitrators mutually chosen by the parties. We think, therefore, that it was the intention of the legislature to make the certificate of the surveyor, thus virtually appointed by the government, and liable to be corrected by the judgment of arbitrators, conclusive evidence of the boundaries and admeasurements of the respective lots of the several settlers in the township.
If any thing was wanting to render more plain the intention of the legislature to pass, immediately and directly by the resolve, without the intervention of a deed from the committee, the' title of the Com monwealth in the lands in Hampden, settled upon before the year 1784, a subsequent provision in the same resolve, respecting the lots settled after that time, will be found to have that effect. For with regard to these it is resolved that there be released to each of the inhabitants, &c., and the committee for the sale of eastern lands are empowered, on application from any of the last-mentioned inhabitants, to release to the person applying, &c. With respect to the first class of settlers, there s a present and immediate release ; as to the *302 second, there is only a provision for a future release, and that by the committee.
We are not bound to inquire for the reasons of this manifest distinction between the lots occupied by these different classes [ * 346 ] of settlers ; for the legislature had a right to * adopt its own course in disposing of the public lands. But the probability is, that they considered those settlers who had entered upon and improved lands belonging to the public, before and during the war, as having acquired a semblance of title at least, the actual proprietorship being in some measure unsettled until the war was closed ; and, therefore, that an immediate confirmation was proper. Whereas, those who had gone upon the land after the contest was definí lively settled, when there could be no question about the title, were considered altogether in the light of intruders ; and that a sale to them at a reasonable price was all that they could reasonably expect. We see, therefore, that, with respect to the first class of settlers, the sum of six dollars and fifty cents only is required, which was probably in tended merely to defray the expense of surveying, &c. ; but with re gord to the second class, fifty cents per acre was required, which was about the average price of wild land at that period.
■ We have said, that it is not altogether clear that the committee, who made the deed to Mayo, had any authority for that purpose from the legislature. They refer, in their deed, to a resolve of the 19th of June, 1801, as giving them that authority, and generally to other resolves, which they have not specified. The one to which they refer is the only one to be found, giving to John Read and Peleg Coffin, Esquires, two of the committee for the sale of eastern lands, any authority to make deeds for the Commonwealth. Indeed, by that resolve, the general authority of the committee is revoked, and special authority is given to those two, who had been of the committee, “to fulfil and perform all the bargains and contracts which have been made by said committee, pursuant to the powers granted them by the General Court, and to make and execute the necessary conveyances for that purpose ” ; and they are vested with all other powers, which the said committee possessed before the passing of the resolve. There was no bargain or contract respecting this land, which [*34'7] needed' a conveyance from them. The * legislature had done every thing by their resolve which was necessary to pass the title of the Commonwealth to the predecessor of Libby, the respondent.† And there was no power subsisting in the said com *303 mittee before, to make any conveyance of the land disposed of by the first branch of the resolve of 1795.
It has been objected, that Simon Smith, under whom the respondent immediately claims, has acquired, by virtue of the resolve of 1795, a right to lot number nine in the town of Hampden, adjoining to number ten, which includes the land now in dispute. But this is wholly immaterial, as he might acquire one lot by his own settlement, and as many more as he may have purchased bond fide ; the resolve establishing the title in the assignees of original settlers, as well as in the settlers themselves. Lot number ten was released or confirmed by the resolve to Edward Smith, his heirs, and assigns. The land defended is part of that lot, and was purchased by Simon Smith of Edward, and by Libby from Simon Smith. One lot only was released in virtue of the settlement of Edward Smith ; and it is immaterial into how many parcels that lot was divided by conveyances from the first settler. The operation is the same as if Edward Smith had died without conveying, and the lot had been divided among his heirs by a commission from the judge of probate. Each heir, in such case, would have the title of the Commonwealth, as to his particular part of the lot.
Ballard’s certificate shows that both the lots, numbered nine and ten, were settled before the 1st of January, 1784 ; and, therefore, both were released to the respective settlers, or their assignees, by the resolve.
We are all of opinion that the verdict in this case is right, and judgment is to be entered upon it accordingly.

 9 Mass. Rep. 185.

 Ibid. 192.

 Porter vs. Perkins, 5 Mass. Rep. 233.— Warren vs. Childs, 11 Mass. Rep. 222.— Hamblet vs. Francis, 4 Mass. Rep. 78. — Kennebec Purchase vs. Call, 1 Mass. Rep. 483. — Bennett vs. Irwin, 3 Johns. 366. — 4 Dane, Ab 148, ch 110, art. 5. — Dixom, 663. — 2 Preston, Con. 324. — Sed vide Russell vs. Coffin, 8 Pick. 143.— Ray vs. Paisley, 7 Mass. Rep. 381.

 Vide, as to the conveyance of land by towns and proprietors of common lands by vote without deed, Springfield vs. Miller, post, 415.— Codman & al. vs. Winslow, 10 Mass. Rep. 146. — Adams vs. Frothingham, 3 Mass. Rep. 352. — Baker & al, vs. Fales, 16 Mass. Rep, 497. — Rehoboth & Seekonk vs. Hunt, 1 Pick. 224