THORNDIKE vs. BARRETT.

Of the conveyance of proprietors' lands by their committee and clerk, under au-
thority given to them by votes of the proprietors.

THIS case having been tried again in this Court, [Vid. 2 *Greenl.*
312,] the demandant regularly deduced his title to the demanded
premises from *William Molineaux*, who held the same under a
deed of the following tenor:—

" To all people unto whom these presents shall come: *John*
" *Molineaux* of *Boston*, in the county of *Suffolk* and commonwealth
" of *Massachusetts*, merchant, in the capacity of clerk to the pro-
" priety known by the name of the Twenty Associates of the
" Lincolnshire Company, sends greeting.  Whereas the said pro-
" priety at a legal meeting on the twenty third day of *September*,
" in the year of our Lord one thousand seven hundred and eighty-
" five passed the following vote, viz: ' Voted, that *Beauchamp*
" *Neck* be sold by the standing committee, either by public or
" private sale, as they shall think most for the interest of the pro-
" priety, and the money arising therefrom be put into the hands
" of the treasurer, to be disposed of as the proprietors shall di-
" rect; and that public notice be given of this vote thirty days
" before the sale;'—and at another meeting of the standing com-
" mittee of the Twenty Associates of the Lincolnshire company,
" on the thirty first day of *October*, in the year of our Lord one

" thousand seven hundred and eighty-five, ' The clerk having in-
" formed the committee that the intended sale of the lands on
" *Beauchamp Neck* and *Leverett's Neck* have been duly advertised
" in *Adams' & Nourse's* Independent Chronicle, of the twenty
" ninth day of last *September*, agreeably to the votes passed the
" twenty-third day of last *September*; and of the several offers that
" have been made for *Beauchamp Neck,* supposed to contain about
" five hundred acres, and Mr. *William Molineaux's* offer of six
" shillings per acre being the highest, whereupon *voted,* that this
" committee, by virtue of power vested in them, do accept
" the offer made by Mr. *William Molineaux,* and engage to sell
" him all the unappropriated land on *Beauchamp Neck,* in the
" township of *Camden,* lying within the patent to *Beauchamp* and
" *Leverett* he paying six shillings per acre for the same;'—and at
" another meeting of the standing committee of the Twenty Asso-
" ciates of the Lincolnshire company, on the twelfth day of *De-*
" *cember* in the year of our Lord one thousand seven hundred and
" eighty-nine passed the following vote, viz: 'Whereas the Twenty
" Associates of the Lincolnshire company, at their meeting on the
" 23d day of *September* in the year of our Lord one thousand seven
" hundred and eighty-five, *Voted,* that *Beauchamp Neck* be sold
" by the standing committee either by public or private sale as
" they shall think most for the interest of the proprietors;' and
" whereas the standing committee at their meeting on the thirty
" first day of *October,* one thousand seven hundred and eighty-five
" did agree with and make sale of the said neck of land to Mr.
" *William Molineaux* on certain conditions, which conditions said
" *Molineaux* has complied with, as per an account settled the fourth
" instant; therefore, *voted,* that the clerk of this propriety do, as
" soon as may be, execute a good and lawful deed of said *Beau-*
" *champ Neck,* agreeably to the usual forms in like cases practised,
" unto Mr. *William Molineaux;'*—And whereas the said propriety
" at their meeting on the thirteenth day of *May, Anno Domini*
" one thousand seven hundred and sixty-eight, passed the follow-
" ing vote, viz: ' That the proprietors' clerk be, and hereby is
" empowered to make and execute any deed or deeds the stand-
" ing committee shall judge necessary, for granting and conveying
" any of the lands belonging to this propriety, to any person or

" persons, which deed or deeds shall be approved of by at least
" two of the committee, and expressed on the same in writing
" under their hands;' as by the proprietors' records, reference
" thereto being had, the foregoing votes will fully appear:—Now
" know ye, that I the said *John Molineaux*, in my capacity before
" mentioned, for and in consideration of the sum of one hundred
" and twenty pounds lawful money, to me in hand paid before the
" ensealing hereof, by *William Molineaux* of *Boston*, in the coun-
" ty of *Suffolk* and commonwealth of *Massachusetts*, merchant, the
" receipt whereof I do hereby acknowledge, have, and by these
" presents do, in my capacity aforementioned, by virtue, power
" and authority to me granted in and by the vote last recited,
" grant, bargain and sell unto the said *William Molineaux*, all
" that tract or parcel of land called and known by the name
" of *Pitts* or *Beauchamp Neck* lying and being in the township of
" *Camden* and county of *Hancock* and commonwealth of *Massa-*
" *chusetts*, butted and bounded as follows, viz:—Northwest on
" land of *Abraham Ogier* and land of *Robert Thorndike*, containing
" fifty acres, and a pond, south west on *Goose Harbor*, south-east
" and north-east on the ocean, containing five hundred acres more
" or less, and now belonging to the said propriety, and all the im-
" provements and advantages that now belong to the same; pro-
" vided, that the said *William Molineaux*, nor his heirs, nor any
" person or persons under him or them, shall not work into lime
" any quarry or parcel of lime rock within the land before de-
" scribed, agreeably to the deed of indenture made between the
" heirs of Brigadier *Waldo* and this propriety, bearing date *April*
" the seventh, *Anno Domini* one thousand seven hundred and sixty-
" eight; and that the said *William Molineaux*, or his heirs, or any
" person or persons under him or them, shall not erect any kilns
" for the purpose of burning lime on the land before described;
" and that the said *William Molineaux*, his heirs and assigns, be
" subject to all the covenants and conditions expressed in the
" same deed of indenture; to have and to hold the aforesaid
" granted premises, with the privileges and appurtenances there-
" of, unto the said *William Molineaux*, his heirs and assigns, to his
" and their only proper use and behoof forever; and I the said
" *John Molineaux*, in my capacity before mentioned, do hereby

" covenant with the said *William Molineaux,* his heirs and assigns,
" that by virtue of the power granted me as aforementioned I
" have good right to sell and convey the premises in the manner
" aforesaid; and that in my capacity aforesaid, I will warrant and
" defend the same to him and his heirs and assigns forever, against
" the lawful claims and demands of all persons claiming by, from
" or under the propriety aforesaid, or me or my heirs. In wit-
" ness whereof, I the said *John Molineaux,* in my capacity afore-
" said, have hereunto set my hand and seal, this fourteenth day of
" *September,* in the year of our Lord, one thousand seven hundred
" and ninety.

" JNO. MOLINEAUX, <em>P. Clerk.</em> (<em>Seal.</em>)

Signed, sealed, and delivered
    in presence of us
      " JAMES S. LOVELL.
      " SAM'L COOPER.

" <em>Suffolk, ss. Boston, Sept.</em> 14, 1790.

" Personally appeared Mr. *John Molineaux,* and acknowledged
" this instrument by him subscribed, to be his voluntary act and
" deed. Before SAM'L COOPER, Justice of the Peace.

" We the subscribers being of the standing committee of the
" within mentioned propriety do, agreeably to the vote of said
" propriety at a meeting the 13th *May,* 1768, hereby approve of
" the written deed of sale.

" NATH'L APPLETON,<br>
" JOSEPH BARRELL, } <em>Standing Committee.</em>"<br>
" SAM'L COOKSON.

The execution of this deed not being denied, the only question
made in the case was, whether the deed was sufficient evidence
of a conveyance of the land therein described, from the Twenty
Associates to *William Molineaux*; and this question *Weston* J. who
tried the cause, reserved for the consideration of the whole Court,
a verdict being returned for the demandant.

*Orr,* for the tenant, argued against the deed, that in every
part, whether of conveyance or of covenant, it spoke the language,
not of the Twenty Associates, but of *John Molineaux*; and thus,

not being excuted in the name of the principal, it was void. *Elwell v. Shaw* 16 *Mass.* 42. *Stenchfield v. Little* 1 *Greenl.* 231.

*Allen, Greenleaf,* and *Thayer,* for the demandant, contended that the votes and the deed, taken together as a conveyance, ought to be so construed as to carry into effect the intent of the parties, of which they afforded sufficient evidence. The signature of the clerk is evidence of the truth of the recitals in the deed, no particular form of attestation being necessary; and the long acquiescence of the proprietors evinces their intent to convey to *Molineaux.* *Browning v. Wright* 2 *Bos. & Pul.* 12. *Ellis v. Welch* 6 *Mass.* 250. 9 *Mass.* 514. *Bott v. Burnell* 11 *Mass.* 167. *Shep. Touchst.* 82, 83. *Co. Lit.* 49, *a.* The votes of the proprietors may be considered as sufficient, of themselves, to pass the estate ; and may operate either in the nature of a covenant to stand seised to uses ; or as a grant to such person as the committee shall appoint ; in which case the deed, with the indorsement of their approval thereon, is a *designatio personæ.* *Mayo v. Libby* 12 *Mass.* 339. *Wallis v. Wallis* 4 *Mass.* 136. *Springfield v. Miller* 12 *Mass.* 417.

*Orr,* in reply, said that this was a case, not of a public corporation, but of certain private individuals, seised in fee of lands, and *delegating to a third person* the power to convey the estate. This power was to be executed by *making a deed,* conforming to the settled principles of law. Having expressed *this* mode of conveyance, all others were excluded ; and this part of their intent being as clearly expressed as the determination to convey, both parts of the vote must stand or fall together. If the estate did not pass *by deed,* it was not conveyed at all.

The cause being continued *nisi* for advisement, the opinion of the Court was delivered at the ensuing *August* term in *Oxford,* by

MELLEN C. J. The only question is whether the deed from *John Molineaux* to *William Molineaux,* bearing date *Sept.* 14, 1790, and recorded *May* 13, 1793, the execution of which was admitted, and which was offered in evidence without objection, is legal proof of a conveyance of the land therein described. A

verdict has been found for the demandant, and he is entitled to judgment, unless the deed is to be pronounced inoperative as a conveyance of the premises demanded. We are to form our opinion upon the deed before us. Having been executed almost thirty five years ago, and then approved by the standing committee of the proprietors, it is entitled to a liberal construction, and ought to be sanctioned as an effectual conveyance, unless legal principles strictly forbid it ; and upon the most careful examination, and comparison of it with those cases which have been supposed to be similar to it, we are satisfied that it is legal evidence of a conveyance of the land therein described. It appears by the deed that the Twenty Associates, *Sept.* 23, 1785, voted that *Beauchamp's Neck*, of which the premises demanded are a part, should be sold by the standing committee, at public or private sale ;—that at a meeting of said committee *Oct.* 31, 1785, the clerk informed them that said *William Molineaux* had offered six shillings per acre, being the highest offer ; that thereupon the committee accepted the offer made by him ;—that at another meeting of the committee *Dec.* 12, 1789, the clerk of the propriety was authorized by them to execute a good and lawful deed of said *Beauchamp's Neck*, agreeably to the usual forms in like cases practised, to the said *William Molineaux* ;—the form of which deeds according to a vote of the proprietors of *May* 13, 1768, was to be such as "the standing committee should judge necessary" for the purpose of granting and conveying the lands of the company; which deed or deeds should "be approved "of by at least two of the committee, and expressed on the same "in writing under their hands." It is a principle of law, well established in *Massachusetts* and this State, that towns and proprietors of common lands may alienate their lands by vote. *Adams v. Frothingham* 3 *Mass.* 352. *Codman v. Winslow* 10 *Mass.* 146. *Springfield v. Miller* 12 *Mass.* 415. Such a vote would clearly have been sufficient. This is the usual mode of proceeding among proprietors of lands in common. In the same manner by a vote of such proprietors, and a draft of lots, their common lands are considered as legally divided. All the conveyances of property in severalty by the proprietors of the *Kennebec* purchase are effected by their vote, by which, as they express it, they "vote,

grant and assign" to A B, &c. ;—and by another vote, a mode of certifying such vote or grant and perpetuating the evidence of it, for the use and in the possession of the grantee, or person to whom the land is voted, is designated ; *to which mode the clerk of the proprietors conforms, by giving an instrument, in the nature of a certificate of the vote,* and, in some degree, resembling a deed ; being under the seal of the company, and signed, and acknowledged by the clerk before a Justice of the Peace. These modes of conveyance, various as they are, have been adopted and sanctioned, in virtue of a provision contained in successive statutes relating to this subject, by which proprietors of lands in common " are empowered to order, manage, improve, divide and " dispose of [their common lands] in such way and manner as shall " be concluded and agreed upon by the major part of the inte-" rested present at any legal meeting ; the votes to be collected " and accounted according to the interests." Under this statute authority the above mentioned vote of 1768 was passed by the twenty associates, as to the sale of their lands, and mode of conveying the same, and perpetuating the grant or sale. It is proper here to observe that this power given to proprietors is a peculiar one ; a power of agreeing on the mode of dividing and disposing of their property ;—a power which persons in their individual capacities do not possess ; they must conform to those principles and modes of conveyance which our statutes have distinctly and explicitly prescribed. The difference is important. Viewing these principles, in connection with the several votes of the Twenty Associates, the proceedings of the standing committee in making the contract of sale, and in writing approving of the deed, in behalf of the proprietors, which the clerk had made " agreeably to the usual forms in like cases practised," we are well satisfied that they can never be permitted to deny that the title to the lands described in the deed passed to the grantee. We are confirmed in this opinion by the case of *Mayo & al. v. Libby* 12 *Mass.* 339. The Court there held that a resolve, releasing to " each settler" in *Hampden,* who was on the land before a certain day, one hundred acres in severalty, to be laid out so as to include his improvements, although it did not give any bounds or description of the same, was sufficient to pass the estate in the

hundred acres ;—leaving those particulars to be afterwards settled by a surveyor. Is there any essential difference between that case and this ? There the name of each settler was to be ascertained and the bounds of his lot fixed by a surveyor, after the resolve was passed. Here the name of the purchaser and the price were to be ascertained and fixed by the standing committee, after the vote of sale was passed; and the evidence of the whole to be preserved and delivered to the purchaser by a deed or instrument, made, executed and sanctioned in the manner and form prescribed by the vote of the proprietors; and which was carefully observed and adopted with respect to the deed in question. This case differs from *Stinchfield v. Little* 1 *Greenl.* 231. There the question was, whether the instrument declared on was the deed of *Little.* The only question arose upon the plea of *non est factum.* In the present case the question is whether the estate passed from the Twenty Associates to *William Molineaux* by the deed under consideration. In that case *Little* was held answerable because he had bound himself by some of his covenants in the deed; covenants into which he need not to have entered. In the present case, there is no question of covenants. The lapse of time since the deed was executed may be considered of importance also in another point of view. We have had occasion once before to examine this cause: see 2 *Greenl.* 312. Several questions were presented by the former report of the Judge who sat in the trial of the cause, and the verdict was set aside because certain proposed testimony was rejected; a part of which had relation to an asserted disseisin of *William Molineaux.* By the report now before us it seems that all other questions were satisfactorily disposed of, except that as to the effect of the conveyance from the company to *Molineaux.* The deed to him, as we have before stated, has been registered more than thirty-two years. And now, by the statute of limitations, the Twenty Associates are barred of all remedy by action to recover the demanded premises; because ever since the conveyance, *William Molineaux* and those claiming under him have held all, or a part the lands openly and adversely to the proprietors. Such we must consider to be the fact, since the second verdict has put a negative upon all pretence of disseisin committed upon him. The

case before us has several peculiar characteristics, which dis-
tinguish it from all those with which it has been compared; and
not deeming the decisions in those cases as necessarily applicable
this, we feel authorized, as well as disposed, to pronounce the
deed, under all the circumstances attending it, as a conveyance
of the land there indescribed.    Such was the unquestioned belief
of all concerned at the time; and we perceive no principle of law
which should prevent our giving it the operation and effect intend-
ed.    We are all of opinion that there must be judgment on the
verdict.