By the Court.

The question brought before us by this plea in *18 abatement is, whether the death of one of the tenants in common, who has had an opportunity to come in and answer, and has failed so to do, shall abate the petition.
Upon a writ of partition at common law, on which partition is made amongst all the tenants, as well plaintiffs as defendants, the death of any one of the parties abates the writ, if it take place before the interlocutory judgment be rendered. (b) But this rule of the common law does not apply to the case before us. The deceased had opportunity to appear, if he had chosen to. [ * 10 ] The presumption is, that he had no * objection to the partition prayed for. The judgment in this case will affect the possession only, not the rights of the parties, (c) The immense number of shares, in which many estates in common are holden, as in townships, the lands f the Plymouth Company, and other similar proprieties, besides this of Nantucket, forms a strong argument against the support of this plea. In short, to sustain it would, as to the case before us, and many others often occurring, amount to a virtual repeal of a most useful and convenient provision of law. The plea is adjudged bad, and the respondents must make such further answer as they shall be advised to.
The respondents had also filed two pleas in bar.
In the first plea, they deny the right of the petitioners to have the partition prayed for, because that in and by the statute of 1803, c. 121, entitled “An Act making further provision for the proprietors of the Island of Nantucket,” (the preamble of which act is in the words following, «¿2.; “ Whereas an act, entitled ‘ An Act for the better managing of lands, wharves, and other real estates lying in common,’ passed the 10th day of March, 1784, hath proved insufficient to restrain disorderly and unruly persons from overstocking their lands on the Island of Nantucket,”') it was, among other things, enacted that the proprietors of the common and undivided lands on the Island of Nantucket should, from and after the passing of said act, meet together some time in March annually, and from time to time, as they should judge proper, to make such rules, and adopt such modes of improvement, as they should think just and equitable ; that said rules and regulations should be determined by a majority of votes; and that each proprietor should vote according to the quantity of land, or rights, which he or she should own therein, and that said votes should be binding on such proprietor. And tire respondents further say, that from the passing of the said act to the present time, the said proprietors have met at said Nantucket some *19 time in March annually, and from time to time, as they have judged proper, and have made rules and adopted modes of improvement * for the regulation of their interest in the [ * 11 ] premises, pursuant to the above-recited provisions of the said act, which rules and modes of improvement have been duly entered and recorded by the said proprietors’ clerk, duly chosen and qualified, in their records kept for that purpose; all which they are ready to verify; by reason of all which the said petitioners are by law precluded from having partition, &.c.
In the second plea in bar, the respondents allege, that the proprietors of the common and undivided lands on the Island of Nantucket are, and, from the time whereof the memory of man is not to the contrary, have been, an ancient body politic and corporate, known by the name of the proprietors of the common and undivided lands on the Island of Nantucket, and, as a body politic and corporate, are, and have been, during all that time, invested with the exclusive right, at their corporate meetings, to divide, dispose, cultivate, feed, manage, and improve, the common and undivided lands aforesaid in such manner as, in their corporate capacity, they should deem just and equitable ; and the said respondents further say that, during all that time, they have, as a body politic and corporate as aforesaid, at their corporate meetings duly convened, exercised the exclusive right of dividing, disposing, cultivating, feeding, managing, and improving, the common and undivided lands aforesaid, in such manner as by them in their said corporate capacity hath been deemed just and equitable; and they further say, that it is not, and that during all the time aforesaid it hath not been, competent for any one or more members of said corporation to have any proportion of the property of said corporation set off or divided to him or them by petition for partition as aforesaid. All which, &c.; wherefore, &c.
The petitioners demurred to both the foregoing pleas in bar; and the respondents joined in demurrer.

By the Court.

Neither of these pleas in bar traverse the tenancy in common. Such a prescription (d) as is attempted to be set up *20 [ * 12 ] by them is against the law of the land, and cannot *be supported. It is essential to an estate in common to be subject to partition, (e) The pleas in bar are clearly bad and insufficient.
ADDITIONAL NOTE.
[14 Conn, 349. — Blessing vs. House, 3 Gill, & J. 290.
But an undivided portion of land (in Pennsylvania) is not the subject of a summons in partition, to divide it between parties holding in common. — Sweeny vs. Meany, 1 Miles, 167.
The difficulty of making partition, and the inconveniences resulting to other tenants, furnish no good reason against it. Scovil vs. Kennedy, 14 Conn. 349.
No writ of partition can be had at law upon a merely equitable title. —Conle vs. Barney, 1 Gill. &y J. 324. — Nor unless there be a common possession; which is ah ways implied from a common title, until the contrary be shown, (in North Carolina Thomas vs. Garvan, 4 Dev. 223. —-F. H.]
*21 After this judgment was pronounced, the counsel for the respond-' ents expressing a strong wish for leave to plead anew, it was agreed that they should file a third plea, traversing the seisin of the petitioners, on which the latter agreed to take issue, and it was further agreed that the trial of that issue should be had, at the sittings here, after that term, before the Chief Justice.
The respondents accordingly pleaded that the petitioners were not seised of the land aforesaid as tenants in common, in manner and form set forth in their petition, and tendered an issue to the country, and the petitioners joined the said issue.
On the trial of this issue, which was had as aforesaid, a verdict was found for the petitioners, that they were seised as tenants in common of the shares respectively, and in manner and form as they have set forth in their petition.
The petitioners, to maintain the issue on their part, showed that" they, and those whose estate they have in the premises, were seised as tenants in common from the year 1717, a propriety in common having then been formed under and pursuant to the provincial statute of 12 Anne, c. 2, entitled “ An Act directing how meetings of proprietors of lands lying in common may he called; ” (2) which propriety has ever since been in existence; and that, by the said propriety,' they have been admitted and permitted to hold and act as tenants in common, and members of said propriety; — that, in the year 1810, and before the filing of their petition, they regularly applied to said propriety, to have their respective purparties assigned to tiiem, to hold in severalty, which was refused.
Tiie respondents, — after having, in due season, objected to the trial of this issue in the county of Suffolk, which objection was overruled by the judge,—to maintain the issue on their part, gave in evidence the original title of the inhabitants * of Nantucket to the lands in that island, under a patent [ * 13 ] from Francis Lovelace, governor of the colony of New York, dated June 28,1671, and under two other patents from Thomas Fungan, also governor of that colony, one dated June 5, 1684, and the other dated June 27, 1684; extracts of which follow.
Extract from the Patent of Francis Lovelace, dated June 28,1671.
“ Whereas there is a certain island within these his royal high* nessJs territories, lying and being to the south-east of Martin’s Vineyard, stretching in length near upon a south-east and north-west line, commonly called and known by the name of Nantucket Island; which said island was heretofore purchased, for a valuable consider *22 ation, by Thomas Mayhew, of Martin’s Vineyard, Senior, and hh son Thomas Mayhew, Junior, of James Fouett, agent of William, earl of Stirling, in whom the government then was, and by them conveyed and made over to several of the present inhabitants, the freeholders and their associates, who have likewise made purchase of the Indian right there, now in their tenure and occupation: — Now, for a confirmation, &c., I do hereby grant, ratify, and confirm, unto Tristram Coffin, Senior, and Thomas Macy, as patentees, for and in the behalf of themselves and their associates, the inhabitants, freeholders, their heirs, successors, and assigns, the said island called Nantucket Island ; that is to say, so much thereof as hath been by them made purchase of, together with all the land, &c., and all other profits, commodities, emoluments, and hereditaments, to the said- island belonging, or in any wise appertaining; and the said island and premises shall be held, deemed, reputed, taken, and be, an entire enfranchised township, manor and place of itself; and shall always, and from time to time, and at all times hereafter, have and enjoy like and equal privileges with any town, enfranchised place or manor, within this government,” (meaning the province of New York,) “ and shall in no manner of ways be sub- [ * 14 ] ordinate or belonging unto, have any * dependency upon, or in any wise be under the rule, order, or direction, of any other town or place ; but in all matters of government, shall be ruled, ordered, and directed, according to the instructions I have already given, or hereafter shall give, for the good and welfare of the inhabitants, by the advice of my council. To have and to hold the said island, with all and singular the appurtenances and premises, unto the said Tristram Coffn and Thomas Macy and their associates, their heirs, successors, and assigns, forever.”
Extract from Thomas Fungan’s Patent, dated June 5, 1684.
[After reference to Lovelace’s patent.] “ I hereby give, grant, ratify, and confirm unto, John Gardner and James Coffin, as patentees, for and in behalf of themselves and their associates, the inhabitants, freeholders, their heirs, successors, and assigns, the said island called Nantucket Island, that is to say, so much as hath been. by them made purchase of, together with all the lands, soils, woods, &c., to the said island belonging; — and the said island and premises shall be deemed, reputed, taken, and be, an entire enfranchised township, manor, and place of itself, and shall always, from time to time, and at all time, hereafter, have, hold, and enjoy, like and equa1 privileges with any town or enfranchised place or manor within this government; and shall in no manner of ways be subordinate, or belonging or have any dependence, or in any wise be under the *23 rule, order, or direction, of any other town or place. To have and to hold the said island, Ac., unto the said Gardner and Coffin and their associates, their heirs, successors, and assigns, to the proper use and behoof of the said Gardner and Coffin and their associates, heirs, successors, and assigns, forever. The tenure of said island, Ac., to be according to the custom of the manor of East Greenwich, in the county of Kent, in England, in free and common socage, and D) fealty only. Rendering and paying yearly,” &c.
Cxtract from, Thomas Dungan’s Patent, dated June 27,1687.
* [After reciting the two former patents.] “I give, [ * 15 J grant, release, and confirm, unto John Gardner, James Coffin, William Gyer, Nathaniel Barnard, Stephen Hussey, and John Macy, freeholders and inhabitants of Nantucket, herein erected and made one body corporate and politic, and willed and deter' mined to be called by the name of the tnistees of the freeholders and, commonalty of the town of Sherburn, all the aforesaid tracts. Ac., with the full right and liberty of purchasing from the Indian pro prietors all that the unpurchased tracts, Ac., on the said island, [meaning Nantucket.] To have and to hold to the said trustees of the freeholders and commonalty of the town of Sherburn, and their successors, forever, to and for the several and respective uses following, and to no other uses, intents, or purposes, whatsoever; that is to say, for and concerning all and singular the several and respective parcels of land and meadow, part of the granted premises, in any wise taken up and appropriated, either by patent under the hands of any of his majesty’s governors, in this province, and sealed with the seals thereof, or by particular divisions and allotments, before the day of the date hereof, unto the several and respective present freeholders and inhabitants of the said town, by virtue of the before-recited patent, to the use and behoof of the said freeholders and inhabitants respectively, and to their several and respective heirs and assigns forever. And as for and concerning all and every such tracts and parcels of land, remainder of the granted premises, not purchased, taken up, or appropriated to any particular person or persons, by virtue of the afore-recited deed or patent, to the use and behoof of the present freeholders and inhabitants, their heirs, successors, and assigns, forever, in proportion to their several and respective settlements, divisions, and allotments, as tenants in common, without any manner of let, hinderance, or molestation, to be had or reserved upon pretence of joint-tenancy or survivorship, any thing contained herein to the contrary in any wise notwithstanding :—To be holden of his most sacred majesty, * Ac., [ * 16 ] in free and common socage, Ac., yielding, Ac. And fur *24 ther, by virtue of the power and authority, &c., I will, determine, declare, and grant, that the said inhabitants, freeholders,- the freemen of Sherburn aforesaid, commonly called by the name of the freeholders and inhabitants of Sherburn, or by whatever name or names they are called or named, and their heirs and successors forever henceforward, are, and shall be, one body politic and corporate in deed and name, by the name of the trustees of the freeholders and commonalty of the town of Sherburn; and them by the name of the freeholders and commonalty of the town of Sherburn, as a body corporate and politic in deed and in name, I have really and fully, for his majesty, &c., erected and ordained by these presents, and that by the same name they have succession forever.”
And the respondents insisted that in consequence of this original title thus derived, and from the existence of the propriety shown by the petitioners themselves, and it also appearing that no partition by legal process had ever been made of lands in Nantucket, the petitioners are not tenants in common, within the meaning and intent of the statutes of 1783, c. 41, and 1786, c. 53, authorizing partition by petition; and they requested the judge so to direct the jury.
But the judge otherwise directed the jury. Wherefore, for this misdirection of the judge, and because the issue in fact was tried in the county of Suffolk, they prayed that the verdict might be set aside, and a new trial be ordered.
A motion in arrest of judgment was also made by the respondents at this term, on the ground that the petition contains no definite and intelligible description of the land, of which partition is prayed; and that, if judgment for partition should be rendered upon the verdict, the commissioners to be appointed to make partition will, from the defect of metes and bounds, be unable to execute the duties of their appointment.
This latter motion, and the motion for a new trial, now came on to be argued together, by the same counsel who argued the demurrer upon the plea in abatement.
*For a new trial, it was contended that from the terms of the original grant of the lands in Nantucket, and particularly the last patent of Governor Fungan, it was manifest that these lands were holden by a peculiar tenure, altogether different from an estate in common, as known to the common law. The
grant was to the trustees, as a corporation, in trust for the individual corporators. Although that corporation has ceased to exist, the freeholders of Nantucket are their successors, and from time immemorial have conducted the affairs of the propriety in a manner peculiar to themselves, and different from the management of any *25 other lands in the commonwealth. The tenure and occupation of the lands are very peculiar. The corporation controls and directs the occupation by the individual freeholders, although each holds his purparty in fee simple by inheritance. The use of each parcel is assigned yearly to the respective freeholders, and in the same parcel one frequently has the right of tillage, and another the agistment or pasturage. Nor is there any reason why these inhabitants should not be protected in the enjoyment of peculiar customs, which are consistent with their patent, which arose from their peculiar habits and employment, having always been devoted to the whale-fishery, and which were fully ratified and confirmed by the government of this then province of Massachusetts Bay, by the act of 5 W. <Sf M. c. 2; passed immediately after the annexation of the island by the charter of 1692. The legal estate is now vested in a corporation, and is not subject to partition by any provision of oui laws. Great mischiefs and inconveniences will be felt by these inhabitants, in finding their ancient habits and customs thus broken up. The community will be deranged, and the utmost confusion and disorder follow from a judgment of this Court, that the lands of the corporation are subject to partition.
If, however, the Court should yet be of opinion that these lands are subject to partition, it is still contended that the trial of this issue.of fact ought by law to be in the county * where the land lies. The statute of 1786, c. 53, $ 2, is [ * 18 ] express and positive as to this point. “ The trial of the fact by a jury, whether the petitioner holds in common, in the same proportion he alleges in his petition, or in a lesser proportion, shall be determined in the same county where the land lies, unless the parties shall expressly agree to the contrary,” &c. This provision max-well consist with that of the statute of 1782, c. 57, <§, 2, giving this Court jurisdiction of appeals, &c., from the courts in Nantucket. But if it were otherwise, the statute of 1786, being posterior, must prevail. It is true the petition may be presented in any county; but the trial of this issue' can be in one only. This process being wholly given by statute, the provisions of the statute must be con formed to.
In arrest of judgment, it was contended that the description of the lands was so uncertain, that it would be impossible for commissioners to execute a warrant of partition. If they could by inquiry satisfy themselves of the boundaries of the tract said to be knoxvr by the name of Quaise, and of the situation and quantity of the lands which have heretofore been assigned to sundry persons in severalty, who are not even named, still the respondents have a right that these facts should be tried by the jury. A description so *26 loose and uncertain would not be sufficient in trespass, where dam ages only are in question; but certainty is much more necessary where, as in this case, possession is to be given. It is true that parties aggrieved may be heard by the Court upon the return of the commissioners; but the Court are not a jury, nor are they the forum, by which facts involving the rights of the parties are to be settled.
In support of the verdict, it was said that the grant of these lands was in no essential point different from the usual grants to a number of individuals collectively, which always constitute the grantees a proprietary or quasi corporation. The grant was to the individual freeholders, not to the corporation. These are distinct; [ * 19 ] for the freeholders * may inhabit elsewhere, but members of the corporation must be inhabitants of the island. The grant was also confirmed to individuals by the statute of William fy Mary. The peculiar modes of occupying and managing lands by tenants in common cannot be said to take away their right to partition, which, from such peculiarities, may become more necessary to the tenants.
The objection that there has been a mistrial has no foundation, if both the statutes referred to are taken in connection. The-statute of 1786 intends only that issues of fact arising upon petitions for partition shall be tried as other issues of fact are to be tried ; that is, in the county where the land lies, if this Court sits in such county; if not, then in the county where this Court sitting has jurisdiction of real actions arising in the county where the land lies. The issues arising in Nantucket causes, brought to this Court by appeal, are always tried in this county. And if the objection is founded, tenants in common of lands, not only in this, but in several other counties, will be deprived of a trial of their rights at the bar of this Court.
As to the ground taken for the motion in arrest of judgment, it was answered that the description was as definite as could be given of the lands in question, and was sufficiently certain for the purpose of a partition. The commissioners will ascertain the bounds and quantities upon their view.

By the Court.

The objection to partition of the lands in the Island of Nantucket, in any case, arises from the peculiar phraseology used by the governors of New York in their patents or grants of the island, heretofore within the jurisdiction of that government. The object of the governors seems to have been to prevent individuals from purchasing lands from the aboriginal proprietors, not to create any peculiar tenure. The construction of the grants must be governed by the statute of uses. The right of preemption from the Indians was vested in the corporation; and when the *27 legal estate was in them, a use was created to the * in- [ * 20 ] habitants and their heirs. Since the statute of 12 Anne, these proprietors have acted as a proprietary, in conformity with the provisions of that statute. The owners of the land are then tenants in common, and as such they are entitled to partition by this process of petition.
This Court sits as well for the county of Nantucket as for the county of Suffolk; and, from the necessity of the case, all issues of fact arising in Nantucket must be tried here. If this Court does not sit in the county of Nantucket, it sits here for that county. The issue on this petition must have been tried here, or it could never have been tried at all. The same objection would lie to the trial of issues on petitions for partition of lands in Dukes county, Oxford, Somerset, Washington, Hampden, and Franklin. Such a construction of the statute cannot be yielded to.
The objection, made in arrest of judgment, that the description of the land in the petition is too loose and uncertain, may be obviated by a plan and survey to be made of the island, which we shall order to be done under the direction of the commissioners. Id cerium est, quod cerium reddi potest. (f) Let the interlocutory judgment be entered, that partition be made.
Commissioners were appointed by the Court to make the partition prayed for, and their return was accepted and ordered to be recorded.

 [Thomas vs. Smith & Al., 2 Mass. Rep. 479. — But see stat. 1822, c. 71, § 1. — Ed.]

 [Pierce vs. Oliver, 13 Mass Rep 211 —Ed.]

 [There can be no prescription in this country, strictly speaking. Civil rights and remedies had their commencement here long since the memory of man, in a legal sense.—Ackerman vs. Shelf, 3 Halst. 125.—Arnold vs. Mundy, 1 Halst. 67. — Chambers vs. Furry, 1 Yeates, 167. — Young vs. Collins, 2 Brown, 293. — Opin. Brackenridge, J., in Carson vs. Brazer, 2 Binn. 490. — Dane’s Abr. vol. iii. c. 79, art. 20,21. — Devereux vs. Elkins, Dane’s Abr. vol. v. c. 172, art. 4, sec. 13. But see Spear vs. Bicknell, 5 Mass. Rep. 125.— Rust vs. Low, 6 Mass. Rep. 91.— Gayety vs. Bethume, 14 Mass. Rep. 49. Prescription at the common law seems to have been the same as was the prcescriptio immcmorialis of the Roman law, from whence the rule was probably borrowed. Lilt. sec. 170.— Co. Litt. 115, b. - - Bract. 230. — Doct. Stud. c. 8, p. 27.—Hein, ad Band. lib. 41, tit. 3, pars 6, sec. 225. — Dig. lib. 39, tit. 3, c. 2, § 7, 8. Dig. lib. 8, tit. 2, c. 28, and Gothofr. not. 39. Both by the Roman and the Eng'ish common law, this prescription depended upon usage so ancient that n< *20 memory, record, or evidence, was to the contrary. It was, however, long ago settled in England, that since the statute of Westm. 2, c. 39, u all the time before Rickard 1, was time beyond the memory of man,” upon an equitable construction of the statute before mentioned, {Com. Dig. Prcescr. E. 1. —2 Roll. Mr. 269, b. 10—45;) and so the law remains at this day, (2 Bl. C. 261. — Blanshard, 45. — Burton, 325. — Cruise, Dig. tit. 31, c. 1, § 22,) although an unsuccessful attempt was made, in the reign of Edward 3, to change the time, and limit it to the reign of Edward 1. The answer to the petition of the Commons was, u Let the law heretofore in use remain until it shall be otherwise ordained.” 2 Roll. Mr. 269, 35—40. — It has been said, that for the same reason that time of memory was limited to the beginning of the reign of Richard 1, upon an equitable construction of the statute of Westminster 2, it ought now, since 32 Hen. 8, c. % to be limited to sixty years, upon a like construction of that statute, or, in Massachusetts, to forty years, according to the statute of 1807, c. 75, sec. 1. — 2 Roll. Mr. 269, c. 45. But the construction put upon the statute of Westminster 2, seems to have been much questioned at the time, {Litt. sec. 170. 34 Hen. 6, 36,) and not to be very reasonable. In the case of The Prior of Tiheford vs. The Prior of Caldwell, (34 H. 6, 36,) the plaintiff in a writ of annuity counted upon a prescription in himself and his predecessors from time whereof the memory of man runneth not to the contrary. This prescription the defendant traversed. A deed was produced bearing date in the year 1213, wherein the predecessor of the defendant granted the annuity claimed And a' question arose whether this would maintain the issue. u Suppose,” said Moile, J., u that the jurors should find that the annuity commenced since the time of Richard l,this issue.must be found against the plaintiff/ Jishton, J. u That is not a good verdict, where the issue is joined of the prescription generally. And, sir, in this case, we have nothing to do with the time of King Richard; for notwithstanding the limitation in a writ of Right is fixed to this time, yet in this writ of annuity, or in any other writ where the time of memory is alleged, there is nothing to the purpose of tne statute; for the statute was not made with such intent of a common prescription, but to limit from what time one should allege seisin in a writ of Right,” &c. Prisot, J., however, seemed to think that the statute had fixed the time of memory to which jurors might limit their inquiry. Now, if an unwarrantable construction was put upon the statute of Westminster 2, for the relief of jurors, where they were liable to a heavy penalty for a false verdict, there is no good reason for giving an unwarrantable construction also to the statute of Hen. 8, or to those statutes whicli have been copied from it. This statute does not confer any right; but only precludes the remedy in certain cases. — Davenport vs. Tyrrell, 1 Bla. 675. — Lapse of time might be a good answer to a claim against one in possession, when, at the same time, it could furnish no reasonable ground to support a claim of one demanding possession. —See Dane's Abr. 3 Roll. c. 79, art. 3, sec. 20,21. — Ed.]

 [Potter vs. Wheeler, 13 Ma. Rep. 504. — Ed.]

 See Mass. Gen. Laws, vol. ii. p. 995.

 [It does not appear to be a case where a motion in arrest of judgment could properly be made. It is not a proceeding at common law. But if any person interested has a right to come in and defend, there is no reason why the matters in the petition should not be stated with as much certainty as in a writ at the common law. — Ed.]