## URIAH FOLGER, Petitioner for Partition, *versus* CHRISTOPHER MITCHELL *et al.*

Under *St.* 1783, *c.* 39, § 8, the proprietors of common and undivided land may make a valid partition by vote, and without any instrument under seal.

Pursuant to votes, such proprietors laid out several large tracts of land, each into 27 equal parcels, and having arranged themselves into 27 classes as nearly equal in interest as might be, assigned by lot to each class one parcel of each tract, to be held in common by the members of the class and to the exclusion of the other proprietors. *Held,* that such partition was valid.

If in a partition the parcels of land are made certain by the metes and bounds referred to, an error in the courses and distances stated will be immaterial.

A partition under *St.* 1783, *c.* 39, will be valid, notwithstanding that in some mstances the shares are assigned to the heirs, sons, &c., of A, B, &c., without naming the assignees except by words of description.

If such proprietors appoint a committee to survey a tract of land, and to lay it out in lots preparatory to a partition, they may either assent to the doings of the committee, or make partition without regard to them; so that if only a part of the members of the committee should act, and the proprietors should ratify their doings, and make partition accordingly, the proceedings would be valid.

If a petition for partition is discontinued, it will not defeat a voluntary partition made by the proprietors themselves while it was pending.

FOLGER, in his petition, alleges that he is interested with Mitchell and others in all the common and undivided land on the island of Nantucket, as the same was held in common and undivided on the 9th of December, 1813, and prays that partition may now be made among the proprietors, and that his share may be set off and assigned to him to hold in severalty. Libni Gardner, one of the proprietors, appears, and pleads that he and certain other proprietors own in severalty 8384 acres and 48 rods, part of the lands mentioned in the petition as being in common and undivided, and that these 8384 acres and 48 rods have been allotted, assigned and set

off to them to hold in severalty, by the proprietors of the common and undivided land on the island, since the 9th of December, 1813, and that they are also seised of certain shares in the residue of the common and undivided lands, and traverses the seisin of the petitioner ; on which traverse an issue to the country is joined.

At the trial the petitioner produced evidence in support of his title, which it is unnecessary to state.

It appeared that the interest in the land on the island, (except what has been legally divided) is considered as subsisting in 27 rights or shares, belonging to as many classes of proprietors, each of which shares represents an aliquot proportion of all the undivided lands, equal to 636 sheep's commons, the whole number of sheep's commons being 17,172. The names of all the members of a class are written together in the proprietors' records, and the number of sheep's commons claimed by each member is set against his name. Since the 9th of December, 1813, the proprietors have made partition of eleven large tracts of land, containing about 8384 acres and 48 rods, which the respondent claims that he and others own in severalty. In making partition of each of these eleven tracts the proprietors have first voted to make partition of a particular tract, and appointed a committee to carry the vote into effect. This committee, having surveyed the tract and divided it into 27 parts, have exhibited to the proprietors a report of their doings, and a plan of the land divided into 27 allotments, each allotment being numbered and described on the plan. The committee have also placed bounds or monuments at each of the 27 parcels, so as to enable the class that might draw it to find it with ease. The proprietors at a public meeting have accepted the report and plan, and having classed themselves into 27 great classes in such manner as to produce as much equality in interest as was attainable, they have drawn lots by classes for the 27 parcels in the tract. The parcel drawn by a class was to belong to the members of the class, as tenants in common with each other, but in severalty as to all other persons. The parcels drawn, and the classes which have respectively drawn them, have then been recorded in the books of the proprietary. The courses and distances of the exterior bounds of

Folger
*v.*
Mitchell.

the eleven large tracts are given on the plans, and in the re-
ports of the committees, and the exterior boundaries are for
the most part natural boundaries, which are well known among
the people at Nantucket; so that all of them could be found
with ease if no courses and distances were stated, or if any of
those stated should be incorrect. Portions of the parcels so
drawn by lot have been frequently transferred by descent,
devise, sale, &c. In the eleven divisions the petitioner had
his full proportion set off to him. It did not appear that the
petitioner was present at the meetings at which these trans-
actions took place, but due notice was given of the meetings
and of the objects of them, and it did not appear that any per-
son objected to any of the proceedings.

The petitioner now objected, among other things, that
whereas the committee appointed to lay out a tract, called
*Gibbs' swamp,* consisted of three persons, the report of the
committee was signed and made by only two of them. But
it was proved that the tract was laid out and the plan made by
all three; that after this, one of them died before signing the
report, and it was therefore presented and accepted without his
signature, but that he had assented to every part of the plan
and report before his death. The petitioner objected that this
evidence was inadmissible.

The petitioner likewise objected, that one or more of the
eleven partitions was made in 1821, while a petition of Thomas
Folger for partition was pending in the Court of Common
Pleas at Nantucket; but it appeared that that suit had been
discontinued.

If the Court should be of opinion, that the petitioner ought
to recover, they were to adjudge him such part, either of
the whole land described in the petition, or of any parcel
thereof, as they should find him entitled to; but if they should
be of a contrary opinion, judgment was to be entered for the
respondent.

*Shaw* and *Savage*, for the petitioner, cited, to show that a
partition should be by deed, *Johnson* v. *Wilson*, Willes, 248;
*St.* 1783, *c.* 39, § 5; 4 Dane's Abr. 120; *Porter* v. *Per-
kins,* 5 Mass. R. 235; — and to each proprietor in severalty,
since otherwise all the inconveniences of a tenancy in com-

mon would remain, Lit. § 243, and Coke's Commentary ; *Porter* v. *Hill*, 9 Mass. R. 34 ; *Bartlet* v. *Harlow*, 12 Mass. R. 348 ; *Baldwin* v. *Whiting*, 13 Mass. R. 57 : — and that a partition made by the proprietors pending a petition by one of them for partition, is invalid, *Stearns* v. *Stearns*, 16 Mass. R. 167.

*Prescott* and *Adan*, for the respondent, cited Anc. Charters &c. 247, 402 ; *St.* 1783, *c.* 39, § 8 ; *Codman* v. *Winslow*, 10 Mass. R. 146.

WILDE J. delivered the opinion of the Court. The facts *March 20th.* appearing in evidence on the trial of the issue are reported, and several questions of law have been raised which are to be now decided. The first in order would be that which relates to the petitioner's title, but the objections made at the trial are now waived ; so that the only general question remaining to be considered is, whether the several divisions or partitions, which have been made by the proprietors of the common and undivided lands since the 9th day of December 1813, and under which the respondents claim, are valid in law.

These divisions were made in pursuance of the votes of the proprietors at a regular meeting, and a committee was appointed to make the allotments ; which, being made, were drawn for by lots, and in classes, and thus were assigned, each class to hold in common among themselves the part assigned to them, and to the exclusion of the other proprietors.

Several objections have been made to these divisions. The first is, that it was a partition by parol, and not by deed, and therefore void. In the case of *Adams* v. *Frothingham*, 3 Mass. R. 352, it was decided, that proprietors of common lands might legally divide their lands, or make allotments thereof, by vote, and without deed. The same principle was recognised in the case of *Codman & al.* v. *Winslow*, 10 Mass. R. 146, **400** and again in the case of *The Inhabitants of Springfield* v. *Miller*, 12 Mass. R. 415, and the same has been repeatedly so decided at nisi prius ; and it is admitted by the petitioner's counsel, that in respect to ancient divisions and allotments the law is clearly so. We think that more recent divisions and

allotments are supported by reasons equally cogent.   After a
construction has been given to a statute, titles acquired in pur-
suance of such construction ought not to be disturbed.    The
colony law, and the *St.* 1783, *c.* 39, are substantially the same,
and should receive the same construction.    This construction,
being settled as to the colony law, must be applied also to the
revised statute.    Indeed the revised statute did nothing more
on this point, than to reënact the same provision.    The .aw,
therefore, was not changed, and every one interested might
well act on the presumption, that the construction was settled
by the cases referred to.    But were it otherwise, and were
this statute now to be construed for the first time, we have no
doubt that the construction contended for by the respondents'
counsel is the correct one.    The language of the statute is
general, and does not prescribe the manner in which division is
to be made, but expressly authorizes the proprietors to make
division in such way and manner as shall be agreed upon by
the major part of the interested present at any legal meeting.[1]
This way and manner must be agreed upon by the proprietors,
and the proceedings must be recorded.    The addition of a
seal to the vote of the corporation would give no additional se-
curity or certainty to the conveyance.    It is not required by
the statute.    The statute of frauds is clearly not applicable.

The next objection to be considered is, that the proprietors
were not authorized to create any new tenancies in common,
but should have assigned to each his purparty.    On a writ
*de partitione faciendâ* at common law, or under the statutes of
31 and 32 *Hen.* 8, this was necessary.    This writ, at common
law, only lay between parceners, and there was no difficulty in
assigning to each her purparty.    When the law was extended
by the statutes cited, to jointenants and tenants in common
they were authorized to make partition in the same manner as
parceners had a right to make it at common law.    Our statute
which provides for partition has no such reference, nor does it
require expressly that the share set off shall be held in sev-
eralty.    No case has been cited in which such a construction

---

[1] See Revised Stat. *c.* 43, § 6, 7.

has been given. In the case of *Mitchell & al.* v. *Starluck & al.* 10 Mass. R. 5, no such objection was made, and a different construction was adopted. But we do not think it necessary to decide this point in the present case, which turns on another statute, as to the construction of which we have no doubt. The proprietors had a right to divide in the manner most convenient to them. If they were compelled to assign to each proprietor his purparty, it would be impossible for them to make partition unless all the proprietors were known; and in many cases it would be difficult, if not impossible, to obtain such knowledge. Such a construction, therefore, would be extremely inconvenient, if it would not wholly defeat the object of the statute. The language of the statute does not require this construction, but the obvious meaning is, that proprietors may divide their lands in such way and manner, as they may deem most conducive to their mutual interests.

But it has been argued that these divisions were not reasonable; that they were oppressive and injurious to the interests of the small proprietors, and prevented them from having their shares set off to them respectively in one allotment. It is very possible, perhaps probable, that the mode adopted by the proprietors may operate as some inconvenience to some of the small proprietors; but no fraudulent intention appears, and a strong case must be made out to authorize the Court to set aside the divisions on the ground of inconvenience. To set them aside would probably occasion much greater inconvenience and injury than can be reasonably apprehended from establishing them.

Another objection made is, that the survey was loose and inaccurate, and that the courses and distances given will not bring the lines together conformably to the plan. This objection may be made in almost every case of a survey of a large tract of land, where the same is divided into small lots. It is hardly possible to obtain perfect accuracy, but the rights of the parties may be commonly ascertained. According to a familiar rule of construction, courses and distances are made to conform to the metes and bounds referred to; and it appears by the report, that the exterior lines and boundaries of the several tracts of land divided are well known, so that all of them

can be found with ease, and could be so, if no courses and distances were given, or were given incorrectly.[1]

Another objection is, that the shares in some instances are assigned to heirs, sons, &c., without naming the assignees, except by words of description. But this exception is clearly insufficient to impeach the validity of the divisions. Those who answer to the description will take, for the description is certain and clear.

Another objection is, that the report of the committee appointed to lay out the tract called " Gibbs' Swamp," is void, having been signed by only two of the committee, the whole number being three. This, however, we think is well enough, the third person having joined in all the acts except signing the report, and this we do not think at all important. The return would be good if made by one of the committee at the request of the others. If a plan only had been returned to the proprietors, it would have been sufficient ; and the division would have been good even without any return. The proprietors could undoubtedly make the division in a manner different from that reported. The committee were appointed to procure information and to do certain acts, and though all should have joined to bind the proprietors, yet if only one had acted, it would have been competent for the proprietors to ratify his doings and proceed in the partition.[2]

Only one objection more remains to be considered. It is urged, that when the division was made in 1821, a petition for partition was pending in the Court of Common Pleas, and that the pendency of that suit superseded the doings of the proprietors. No doubt that would have been true, had the petitioner proceeded to final judgment ; but the mere pendency of that suit cannot be pleaded in the present. It is understood that neither of the petitions now pending was instituted before the divisions set up by the respondents were completed.

Upon the whole, therefore, as to the 8384 acres and 48

---

[1] See *Howe* v. *Bass*, 2 Mass. R. (Rand's ed.) 380, 384, n. (a), and cases there collected.

[2] See *First Parish in Sutton* v. *Cole, ante,* 245 ; *Emerson* v. *Newbury,* 13 Pick. 379 ; *Shaw* v. *Nudd,* 8 Pick. 9.

rods, the petitioner has no title, and as to the residue, no objection is made to the prayer of the petition. If the residue can be described with sufficient certainty, commissioners will be appointed to make partition accordingly.