RAYMOND M. ADAMS *vs.* SAMUEL D. HANNAH & others.

Barnstable.    January 7, 1929. — January 30, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Quo Warranto. Corporation,* Exercise of nonexistent franchise or privilege. *Proprietors of Common Lands. Yarmouth Proprietee. Practice, Civil,* Findings by judge, Exceptions, Argument before Supreme Judicial Court.

Upon exceptions saved at a hearing by a single justice of this court of a petition for a writ of quo warranto, the full court considered only those exceptions which were argued or briefed.

One having title to land in Barnstable County filed a petition in this court seeking leave to file an information in the nature of quo warranto, and alleging that the respondents, under titles which they claimed to have derived from Yarmouth Proprietee, were purporting to act as the Yarmouth Proprietors and to exercise the franchise of that corporation in derogation of his title and to the injury of his "private right and interest." The case was reserved for determination by the full court under a stipulation that "if jurisdiction exists probable cause has been shown and the petition may be filed and the case stand for hearing on the merits." It was decided by the full court that it had jurisdiction, and, by rescript, the petitioner was given leave to file the information, the case to stand for hearing on the merits. Thereafter the petitioner filed an information containing allegations similar to those previously made by him and seeking to have the respondents enjoined from acting or purporting to act as such proprietors. The case was heard fully on the merits by a single justice. The petitioner offered no evidence that he was possessed of a private right or interest. The Attorney General did not intervene in the proceedings. *Held,* that, while the petitioner must show such private right or interest in order to maintain the petition and to secure judgment, his title sufficiently appeared from the stipulation above described and by the hearing on the merits on the assumption that·probable cause had been shown.

At the hearing above described, a record of the Yarmouth Proprietee was introduced in evidence showing that in "1735/6" it was voted at a meeting that all undivided lands should be divided; and that the

lands accordingly "were Lotted in 1740 & Recoreded." It also appeared that the proprietors, at a meeting in 1757, voted to appoint agents to prosecute ejectment proceedings, and to lease and sell lands of the proprietors. According to the records, the last meeting of the proprietors was held in 1768. The single justice found that the proprietors in 1740 "made what they then regarded as a final disposition of all real estate. . . . There are, however, records of meetings held . . . [in 1747, 1748, 1757, and 1768]. No business with respect to . . . [the premises claimed by the petitioner] was transacted at any of those meetings"; and found further that the Yarmouth Proprietee came to an end before 1801. *Held,* that

(1) The finding, that the corporation became extinct before 1801, was not inconsistent with the vote of the proprietors in 1757;

(2) That finding, and the finding that there was an intended final division of land in 1740, were warranted.

There was evidence at the hearing above described that one of the respondents secured assignments from descendants of certain of the ancient proprietors assigning all the interest such descendants had in the Proprietee; that that respondent assigned shares in the interest he thus had obtained to other respondents; and that the respondents thereafter caused proprietors' meetings to be called and held. The judge stated in his findings that he was unable to find that the descendants "had any title to the lands, or interest in the corporation on the day of their assignments"; and ruled that the respondents "took the proceedings indicated in G. L. c. 179, for calling and conducting meetings of proprietors of real estate lying in common," and that such proceedings were invalid; and ordered judgment for the petitioner. *Held,* that such rulings and order were correct.

PETITION, filed in the Supreme Judicial Court for the county of Barnstable on February 17, 1927, for leave to file an information in the nature of quo warranto.

The petition contained allegations similar to those contained in the information subsequently filed. The respondents demurred. The case was reserved by *Crosby,* J., for determination by the full court, "it being agreed that if jurisdiction exists probable cause has been shown and the petition may be filed and the case stand for hearing on the merits." By a decision reported in 261 Mass. 125, it was decided that the court had jurisdiction, and by rescript the petitioner was given leave to file the petition, the case to stand for hearing on the merits.

The information was filed accordingly on October 27, 1927. It contained allegations that the petitioner was the owner of land in Barnstable County; that he had filed a petition in the Land Court for registration thereof; that

one of the respondents appeared to oppose such petition; that, having secured certain assignments from descendants of proprietors of Yarmouth Proprietee to the respondent Samuel D. Hannah and that respondent having assigned to other respondents shares in his interest so obtained, the respondents purported to cause to be called and to hold meetings of Yarmouth Proprietors; and that "your petitioner's private right and interest has been injured and put in hazard by the exercise by the respondents of a franchise or privilege not conferred by law in that acting under the guise of being the Yarmouth Proprietors they are interfering with and harassing the petitioner in his use and enjoyment of his said land and are putting him to the expense and delay of a long protracted litigation and inquiry and postponing him in the establishment and registration of the title to said land and impeding his plans for the proper and profitable development of his property and that all of said actions and doings of the respondents depend upon and are fostered by their pretense of being and exercising the franchise of being a propriety known as the Yarmouth proprietors". The petitioner prayed "the consideration and judgment of this court in the premises and that due process of law be issued requiring the respondents to appear and make answer by what warrant they claim to have and enjoy the liberties, privileges, and franchise of being a proprietary as aforesaid, and if law and justice shall so require that the respondents may be so convicted of the premises herein charged against them and may be forejudged and excluded from said liberties, privileges and franchises and enjoined from acting or pretending to act as said propriety or as representatives thereof in any legal proceeding or in any court or in any other manner and for such other orders and decree as law and justice may require."

The case was heard by *Wait*, J. The petitioner introduced a certified copy of the record of the meeting of the Yarmouth Proprietors on "March 23d 1735/6," and the division of the lands in 1740, as described in the opinion, and rested. Evidence offered by the respondents is de-

scribed in the opinion. The assignments to Samuel D. Hannah were by Anthony E. Crowell, Cleon S. Crowell, William F. Jenkins, Samuel B. Jenkins, and Marcus H. Howes. The single justice ordered judgment for the petitioners against all the respondents except Weatherbee, and made certain findings and rulings which are stated in the opinion. The respondents alleged exceptions.

*H. Parker,* (*J. D. Graham* with him,) for the respondents.

*H. Williams, Jr.,* (*A. Van A. Thomason* with him,) for the petitioner.

PIERCE, J. This case comes before us upon exceptions saved by the respondents to certain findings and rulings of a single justice after a hearing upon the merits in pursuance of the judgment of this court in *Adams* v. *Hannah,* 261 Mass. 125, 130.

The record discloses that the petitioner filed his petition for leave to file an information in the nature of quo warranto; that this petition was demurred to for want of jurisdiction; that the case was reserved for the full court, the reservation stating, "it being agreed that if jurisdiction exists probable cause has been shown and the petition may be filed and the case stand for hearing on the merits."

After the order in the decision, *supra,* that "Petition may be filed and case stand for hearing on the merits," the petitioner filed his petition, and after the answer thereto the case came on for hearing before a single justice of the Supreme Judicial Court. The petitioner, as his only material evidence, introduced a certified copy of the records of the ancient proprietors of Yarmouth and rested. The respondents offered in evidence assignments, exhibits 4, 5, and 7, to Samuel D. Hannah of sharer interests which the several assignors had in all the proprietees described in the several instruments of assignment; a petition to a justice of the peace to issue a warrant to call a meeting of the Yarmouth Proprietors "as provided by custom and by law"; an assignment from Samuel D. Hannah of one fifth of his interest in the Yarmouth Proprietee to Edwin J. Hannah and others; a warrant for a meeting of Yarmouth Proprietee; certified copies of the Old Proprietors Records of the Town of Yar-

mouth; and a photostatic copy of a grant to Anthony Thacher, Thomas Howes and John Crowe. The respondents called Marcus H. Howes, who testified that he was a direct descendant of Thomas Howes, and introduced the genealogical tree of the Howes family. Samuel B. Jenkins was also called by the respondents; he testified that he was a direct descendant of one Gyles Hopkins, one of the original Yarmouth Proprietors, and introduced in evidence the genealogical family chart of the Hopkins family. The respondents also introduced in evidence certain Plymouth Colony Records and Province Laws which are printed in the record as exhibit 16. Respecting the several assignments to Samuel D. Hannah, the single justice found as follows: "Howes is a descendant from one of the original grantees. The Crowells and William and Samuel Jenkins are descendants of men once, in all probability, proprietors and tenants in common in the tract originally granted; but I am unable to find that they or Howes had any title to the lands, or interest in the corporation on the day of their assignments. They are ignorant themselves, in regard thereto, of all but their kinship and their good faith toward their grantee."

The exceptions of the respondents, seventeen in number, are directed to portions of the findings, rulings and order of the single justice. Of these exceptions we consider only those argued or briefed, and we shall deal with them in the order of their presentment in the respondents' brief.

The first exception argued in the respondents' brief, as we understand it, rests upon the contention that no evidence was introduced at the hearing on the merits to sustain the necessary allegation of the petition to the effect that the "petitioner's private right and interest has been injured and put in hazard by the exercise by the respondents of a franchise or privilege not conferred by law in that acting under the guise of being the Yarmouth Proprietors they are interfering with and harassing the petitioner in his use and enjoyment of his said land and are putting him to the expense and delay of a long protracted litigation and inquiry and postponing him in the establishment and registration of the title to said land and impeding his plans for the proper and profit-

able development of his property and that all of said actions and doings of the respondents depend upon and are fostered by their pretense of being and exercising the franchise of being a propriety known as the Yarmouth Proprietors."

Under G. L. c. 249, §§ 6, 7, and 10, such evidence is required in the summary hearing upon the petition for leave to file an information in the nature of quo warranto, and, in the absence of the Attorney General's intervention, such proof is required at the hearing on the merits. In the instant case the Attorney General has not intervened. At the hearing the petitioner offered in evidence the transcript from the records of the Yarmouth Proprietors showing the winding up of the proprietorship and rested. The record does not disclose any evidence by the petitioner, or by the respondents, that the petitioner was possessed of a private right or interest, as is alleged in paragraph "9" of the "Information Petition." The single justice found and ruled, "I do not pass in any way upon the title of the petitioner, but assume his right to bring this proceeding to have been determined by *Adams* v. *Hannah,*" 261 Mass. 125. The demurrer to the petition for leave to file an information in the nature of quo warranto admitted the facts stated in the petition for the purpose of that proceeding only. The petitioner, however, contends that the question of his right to a trial on the merits is concluded against the respondents by the agreement contained in the reservation "that if jurisdiction exists probable cause has been shown and the petition may be filed and the case stand for hearing on the merits"; and by the further fact that the case has been tried on the merits, upon the assumption that probable cause has been shown, there being no question that the petitioner's title and possession are necessary elements of the probable cause which the statute requires to be proved. We think the contention of the petitioner is sound and that the agreement is no more than a flourish of words unless it means that the petitioner has title sufficient to maintain this form of action if the Supreme Judicial Court had jurisdiction of the subject matter.

The exception next briefed and argued by the respondents is to the order of judgment for the petitioner against the

respondents other than Weatherbee. The prayer of the petition is for "the consideration and judgment of this court in the premises and that due process of law be issued requiring the respondents to appear and make answer by what warrant they claim to have and enjoy the liberties, privileges, and franchise of being a proprietary as aforesaid, and if law and justice shall so require that the respondents may be so convicted of the premises herein charged against them and may be forejudged and excluded from said liberties, privileges and franchises and enjoined from acting or pretending to act as said propriety or as representatives thereof in any legal proceeding or in any court or in any other manner and for such other orders and decree as law and justice may require." The contention of the respondents advanced in support of this exception is based upon the assumption that the petitioner has no right to the judgment ordered because the single justice has not made the essential finding of fact, that the petitioner is possessed of private rights or interests which have been injured or put to hazard by the respondents' exercise of a franchise or privilege not conferred by law. Because of the legal effect of the agreement and the voluntary action of all parties thereunder there is nothing to this exception.

In the next exception briefed the respondents submit "that the evidence of record, and the findings of the single justice do not warrant his conclusion that the Yarmouth Proprietors, as a corporation, was extinct, and incapable of resuscitation before the year 1801." The single justice finds: "The Yarmouth Proprietors made what they then regarded as a final disposition of all real estate remaining of the original grant at a meeting held April 2, 1740. There are, however, records of meetings held March 14, 1747, March 7, 1748, January 25, 1757, and March 15, 1768. No business with respect to these premises was transacted at any of those meetings." This finding is not inconsistent with the vote of proprietors adopted on January 25, 1757, to appoint agents with "full power to proceed in a proper course of law to eject off any person or persons that have taken in, or enclosed, any of the Proprietor's land in said town, and prosecute the same

to final issue in law if they see cause and . . . [empower] said agents . . . to hire out any of the lands not lotted for a term of years by legal lease; or also to sell to the highest bidder any such unlotted lands and give legal deeds in the name of the Propriety."

The next exception briefed is to the finding of the single justice, "There was here, in 1740, what was intended and supposed to be a final division." This exception is based upon inference drawn from the vote, *supra*, of January 25, 1757. It may well have been that some inconsiderable pieces of land were found to have been unallotted in 1757. In any event the Book of Records of Proprietors shows that the last meeting of the proprietors was held at the West Meeting House in Yarmouth on March 15, 1768.

The next exception briefed is to the finding and ruling of the single justice that the corporation came to an end before 1801. It appears by the record of the proprietors' meeting held "March 23d 1735/6" that it was then "Voted that all ye undivided Lands Now Lying in Common among ye Propriators shall be Divided"; that pursuant to the vote the lands were divided in thirty lots or shares and that they "were Lotted in 1740 & Recoreded." St. 1783, c. 39, § 9. St. 1790, c. 40, § 2. Rev. Sts. c. 43, § 17. St. 1837, c. 180. R. L. c. 123, § 14. *Proprietors of Monumoi Great Beach* v. *Rogers*, 1 Mass. 159. *Rogers* v. *Goodwin*, 2 Mass. 475. *Mitchell* v. *Starbuck*, 10 Mass. 5. *Codman* v. *Winslow*, 10 Mass. 146. *Springfield* v. *Miller*, 12 Mass. 415. *Coffin* v. *Lawrence*, 143 Mass. 110. *Ipswich* v. *Proprietors of Jeffries Neck Pasture*, 218 Mass. 487. The division of common property, whenever that event fully happened, dissolved the corporation at the expiration of ten years thereafter. St. 1790, c. 40. Rev. Sts. c. 43, § 18. It is a fair assumption that all lands had been divided on or before the day of the last meeting on March 15, 1768. It follows that the finding and ruling were warranted by the record before the single justice.

There is nothing in the exception that is directed to a criticism of the finding of the single justice, that "the respondents other than Mrs. Weatherbee . . . took the proceedings indicated in G. L. c. 179, for calling and conducting

meetings of proprietors of real estate lying in common"; or of his ruling thereon, "that the proceedings taken in assumed pursuance of G. L. c. 179, are invalid." It is clear that these respondents other than Samuel D. Hannah were not proprietors except through him, and that he was not a proprietor except through his grantors. Those grantors, Anthony E. Crowell, Cleon S. Crowell, William F. Jenkins, Samuel B. Jenkins and Marcus H. Howes, had by inheritance possible interests in Yarmouth Proprietee, the *quantum* of which they, and each of them, were ignorant. Concerning their titles the single justice stated that he was "unable to find that they or Howes had any title to the lands, or interest in the corporation on the day of their assignments." On the record before us it is impossible to see how any other finding or ruling could have been made.

We have considered all the exceptions and we perceive no errors of law in the findings or rulings. It follows that the entry must be

*Exceptions overruled.*