Sewall, J.
By the exceptions filed and allowed, the demand-ants are stated to be the only children and heirs of Anne Jones, Jun., who was one of the devisees named in the will of Phineas Jones. She became the wife of Richard Codman, and died in 1761. In 1769, the demandants, by their guardian, Richard Codman, were parties to a partition made by order of the Superior Court; in which, among other things, a certain tract, mentioned and described as ten acres of land, bound south-easterly by a street running by the water side to Clarks Point, was apportioned and divided to and among the devisees of Phineas Jones or their heirs. A certain lot numbered six in this partition is assigned to the demandants; and the commissioners, in their return of partition, add to this assignment these words, — “ together with half the brick-yard and flats, if there be any flats below the same.” The same words are also used by the commissioners, in assigning an adjoining lot to John Waite and Hannah, his wife, parties in her right in the same partition. A plan, annexed *158 to this return, and making a part thereof, exhibits the lots thus assigned, bounding south-easterly on the street, and [ * 148 ] opposite to them, o?i the other side * of the street. The brickr-yard, as divided to those two lots.†
The title of Phineas Jones, or of his devisees, to the land thus assigned to the demandants and to John Waite and his wife, is dc duced from one John Pritchard; and there is amongst the evidence a writing, purporting to be a certificate, dated May 30, 1726, by a committee of the proprietors of Falmouth, in which Portland was at that time comprehended, of a laying out or location to Pritchard of four acres of land, described as hounding hy the way ten poles, by a line running north-easterly. And, by a deed, dated in August, 1746, Pritchard conveyed the same four acres to Stephen Jones; and by another deed, dated in September, 1746, Stephen Jones.conveyed the same tract to the executors of the last will of Phineas Jones, to the use of the devisees therein named. In Pritchard’s deed to Stephen Jones, the tract conveyed is described as bounding by a line running north-easterly, as the way formerly went, ten poles; and in the deed of the latter to the executors, the land is bounded south-easterly by a street running by the water side.
The demandants contended, at the trial, that by Stephen Jones’s deed to the use. of the devisees of Phineas Jones, the flats fronting Pritchard’s lot, as divided and assigned in the partition to the demandants, and to John Waite and wife, passed to them. [ * 149 ] * This construction, certainly not warranted by the words either of that deed or of the deed from Pritchard to Stephen Jones, or of the laying out to Pritchard, is grounded upon the ordinance of 1641, and upon a supposed practical construction at the time, conformable to that ordinance, proved by the occupancy of the flats as an appendage of the lot of land.
Without a particular examination of this argument, it is sufficient, *159 on this occasion, to observe that, as a question upon the written evidence, we think the ordinance of 1641 does not apply; at least that application would not be admitted in construing any modern deed, where a tract of land is bounded on a street or way, to con sider it as extending across the street or way, to include other lands and flats below high-water mark, (a)

*158

*159 But respecting ancient writings and titles, it may be reasonable to admit extraneous evidence of the practical construction, as to boundary and extent, which may be proved by actual occupation. This was admitted in the trial of this cause ; and then the construction necessarily becomes a question of fact, which, in the case at bar, the jury have determined upon a variety of evidence submitted to them. The resolutions, votes, and usages of the town and proprietors of Falmouth; the construction given by them to similar grants and locations; and testimony respecting the occupation of the premises in controversy by the demandants, and by the proprie *160 tors of Falmouth, or those claiming under them, were received, without objection, as evidence upon this point. We do not per ceive that the jury were erroneously directed in any particular, or, indeed, restrained by any direction given them, as to the result of this evidence. And their verdict, if they determined against the demandants upon this part of the case, settles the question of construction, after an examination of all the extraneous evidence adduced for the demandants and the tenant.
*159 ADDITIONAL NOTE.
[See, as to flats, &c., Dawes vs. Prentice, 16 Pick. 435. — Mayhew vs. Norton, 17 Pick. 357. — Sale vs. Pratt, 19 Pick. 191. — Sparhawk vs. Bullard, 1 Metc. 95.—Gray vs. Bartlett, 20 Pick. 186. — Knox vs. Pickering, 7 Greenl. 106. — 8 Greenl. 85.
A creek in which the sea ebbs and flows, and from which the tide does not ebb entirely, is a boundary beyond wlich the owner of flats cannot recover. — Sparhawk vs. Bullard, 1 Metc. 95.
Under the colonial ordinance, the ebb of the tide, when from natural causes it .ebbs the lowest, and not the average or common ebb, is the low-water mark. —Ibid.
This ordinance is part of the common law of Maine ; and applies, wherever the tide ebbs and flows, though it be fresh water, thrown back by the influx of the sea. — Lapish vs.. Bangor, &c., 8 Greenl. 85.
See Emerson vs. Taylor, 9 Greenl. 42.
The ordinance, though never expressly extended to the Plymouth Colony, is a settled rule of property through the state of Massachusetts. — Barker vs. Bates, 13 Pick. 255.
A grantee bounded by high-water mark, is not a riparian proprietor, nor within the ordinance. Otherwise, if bounded by the stream. — 8 Greenl. 85.—F. H.]
*160 *Asto the title by occupancy in the demandants, as a disseisin of the proprietors, the evidence upon this point was necessarily blended, and makes an essential part with the evidence adduced to prove the constructive operation of the deed, and other written evidence in the case. But it was also considered distinctly, and referred to the jury as a question of fact, as it certainly was. And we perceive no misdirection in the observations stated to have been made to them, or any restriction upon their inquiries. Their verdict therefore, as a determination upon evidence, must be confirmed ; unless any part of the evidence, offered for the tenant and objected to at the trial, was incompetent, and improperly admitted.
The laying out to Peter Woodbury and to Nathan Winslow, the tenant of two acres of flats, including the demanded premises, is proved by a certificate in writing under the hands of the proprietors’ committee, dated January 30, 1775; and after this certificate, the clerk of the proprietors has further certified that the location was allowed and confirmed at a meeting of the proprietors regularly holden February 14, 1780. The records of the proprietors were adduced at the trial, and the vote upon this subject passed at that meeting appears, to be a general acceptance and confirmation of certain locations then reported by their committee, without designating the location in question, or any others in particular. But it also appears from the same records, and from other evidence, that this was the course of proceedings observed by the proprietors in all their locations; and although it may be objected to, as loose and uncertain, and less advantageous to the parties concerned than might be wished, yet we cannot say that the writing is incompetent evidence, or that it is refuted, or avoided, by the recourse had to the proprietors’ records.
Proprietors of common lands in each town and district have authority to order, improve, divide, and dispose of the same, in such way and manner as the major part, determined [*151] *by the majority of interests, shall conclude and agree. (1) They have authority to hold meetings, to *161 appoint a recording clerk, and to pass orders for managing, improving, and dividing, their lands. (2) ^heir records and certificates upon these subjects must be, and are continually, received as evidence ; and their practice for a number of years is in itself proof of their agreement and consent in a particular mode of conducting their business; which, if not illegal, or so uncertain as to be utterly void, must be considered as settled by the will of the concerned.†
Hopkins and Whitman, for the demandants.
Mellen and Longfellow for the tenant.
I may observe, further, that the evidence of seisin by the partition, if that is relied on for the demandants, is fully answered by the act of the proprietors in the location to the tenant. If the partition was an entry for the demandants, the location was an entry upon them for the proprietors ; or, if this evidence is not conclusive or satisfactory for either party without an actual occupation, the evidence and testimony upon this point leaves' the fact in uncertainty. There is, indeed, no evidence of any continued, exclusive, notorious occupation of the parcel of flats in controversy, either by the demandants or the tenant. And, upon the whole, the title of the tenant, immediately from the proprietors, by a location of the flats to him, which admits of no question of construction, is in itself a seisin, if the proprietors had the right of entry, when that location was made ; for in every case of a mixed possession, the legal seisin is according to the title. (b)
The exceptions filed in this case are overruled, and judgment is to be entered, according to the verdict, for the tenant.
ADDITIONAL NOTE.
[See Inhabitants, &c., vs. Thacher, 3 Metc. 239.
A and B, the owners of adjoining parcels of woodland, not divided by a fence, re spectively cut trees beyond the line. Held, this mixed possession did not give to each,, possession of the strip cut, as against a stranger, but the true line determined tho possession.— Leach vs. Woods, 14 Pick. 461.—F. H.]

 Sketch of that part of the plan alluded to by the Court:

 [It has been held, that, if lands be described as bounded on the sea or salt water, the grantee will hold the lands to low-water mark, so that he does not hold more than one hundred rods below high-water mark. — Storer vs. Freeman, 6 Mass. Rep. 435.— Commomoealth vs. The Inhabitants of Charlestown, 1 Pick. 180. — Austin Al. vs. Carter Al., 1 Mass. Rep. 231. —And if the land be described as bounded on a river, the grantee will hold to the thread of the river. — Lunt vs. Holland, 14 Mass. Rep. 149. — Hatch vs. Dwight & Al., 17 Mass. Rep. 289. — By parity of reason, where land is described bounding along a highway or upon a highway, it ought to be intended that the grantee should hold to the middle of the highway, (Jackson, ex Dem. Yates, vs. Hatheway, 15 Johns. Rep. 447 —Jackson, ex Dem. Kingston, vs. Low, 12 Johns. Rep. 252;) or the whole of the highway, in case the soil belong to the grantor, who is not a proprietor of the lands on the opposite side of the way. But in Hatch vs. Dwight, ubi sup., it was held that a deed describing lands as running to the bank of a river, did not pass the soil to the thread of the river; and in Storer vs. Freeman, ubi sup., it was_ held, that a deed describing lands as running to the shore, and by the shore, did not pass the flats. And in Lufkin vs. Haskell, (3 Pick. 356,) it was held, that a grant of “ thatch bank upon an isthmus between two rivers, which is covered by the sea at high water,” did not pass the lands to the channels of the rivers on each side; and that the ordinance of 1641 was inapplicable to such a grant. — Ed.]

 See Prov. Act, 4 W. & M. c. 12.

 Prov. Act, 12 Anne, c. 2.

 ADDITIONAL NOTE.
[If a record in the book of proprietors of common lands is a distinct record of a vote at a regular meeting, granting to one of their number a parcel of the common land in severalty, by definite and intelligible terms; it seems, parol evidence is not admissible to control the effect of such vote.— Williams vs. Ingell, 21 Pick. 288. Otherwise, it seems, where the entry is not the record of a proprietors’ vote, but may be either their act or that of the clerk or other officer, the book being ambiguous in this respect. — Ibid.
See Scott vs. Dickinson, 14 Pick. 276. — F. H.]

 [Commonwealth vs. Dudley, post, 403. — Brimmer vs. The Proprietors of the Long Wharf 5 Pick. 131. — Ed.]