## THOMAS G. ATKINS *versus* WILLIAM H. BORDMAN *et al.*

The owner of two adjoining messuages fronting easterly on a street, conveyed the southerly messuage, in 1703, by a deed, in which, after stating that on the southerly side of that messuage " there is a gate and passage-way of about five feet wide leading from the street into the yard of the said messuage," he " reserves unto himself, his heirs and assigns for ever, free liberty of ingress, egress and regress through and upon the said gate or passage-way, for carrying and re-carrying wood or any other thing through the same and over the yard or ground of the said messuage hereby granted, into and from the housing and land of the grantor for the use and accommodation thereof, without damnifying or annoying thereby the grantee, his heirs or assigns. And it is mutually agreed, that whensoever the grantee, his heirs or assigns, are minded to make or add any addition of building backward, he or they shall only make the breadth to extend equal with the breadth of the back of the chimneys of said tenement hereby granted." It was *held*, that although the owner of the northerly messuage had enjoyed the passage-way for a period long enough to give a prescriptive title, yet that as the use had been consonant with the deed, the easement must be deemed to have been under and not adverse to the reservation, and must be explained and limited by the terms of the reservation.

*Held* also, that although the grantee arched over the passage-way leading from the street, and narrowed it to the width of the old gate way, yet that if it was substantially as convenient as before, the grantor had no ground for claiming damages.

*Held* also, that the grantee had a right to build northwardly as far as the line of the chimney, but no further.

*Held* also, that the grantee had a right to extend the old building or a new building as far westwardly as he should choose, provided he left a suitable and convenient passage-way across his lot to the other messuage ; and that such extension might be made after forty years' enjoyment of such a passage-way close by the rear of the old building, inasmuch as the deed explained the use and rebutted a prescriptive title to a passage-way in that precise place.

*Held* also, that the grantee was not restricted as to the height to which he might raise his building.

THE plaintiff brought an action on the case against the defendants, for obstructing a passage-way and interrupting the light and air to the plaintiff's estate ; to which the general issue was pleaded.    The case was tried in 1833, before *Wilde* J

It appeared that the plaintiff and the defendants were in the occupancy, as owners respectively, of two adjoining messuages on the westerly side of Washington street, in Boston, the northerly messuage being owned by the plaintiff, and the southerly one by the defendants.

The plaintiff proved, that before 1703, both messuages be-

longed to Atherton Hough, who in that year conveyed the southerly messuage to Henry Tew, by a deed containing the following clauses :— " On which side there is a gate and passage-way of about five feet wide, leading from said street between said housing and land and said messuage herein granted, into the yard of the said messuage, reserving out of this bargain and sale unto me the said Atherton Hough, my heirs and assigns for ever, free liberty of ingress, egress and regress through and upon the said gate or passage way, for carrying and re-carrying wood or other thing through the same and over the yard or ground of the said messuage hereby granted, into and from the housing and land of me the said Atherton Hough, for the use and accommodation thereof, without damnifying or annoying thereby the said Henry Tew, his heirs or assigns. And it is mutually agreed between the said parties, that whensoever the said Henry Tew, his heirs or assigns, are minded to make or add any addition of building backward, he or they shall only make the breadth to extend equal with the breadth of the back of the chimneys of said tenement hereby granted."

The plaintiff then traced the title of the defendants through several conveyances referring to the deed above mentioned and the covenants and limitations therein contained, into the hands of William H. Bordman, the defendants' ancestor, who died in 1827.

The plaintiff then introduced evidence to prove that his own title was derived from Atherton Hough, in order to avail himself of the rights and privileges reserved in the deed to Henry Tew.

The plaintiff proved by the testimony of witnesses who had known the two messuages more than fifty years, that prior to the erection by Bordman senior, in 1823, of the buildings now complained of, the houses existing on both lots of land were ancient houses, that the rear part of the old building on the defendants' land was about sixteen feet to the eaves, and twenty-one feet to the ridge, and that the kitchen or rear part stood opposite to the rear part of the plaintiff's building, at the distance of between six and nine feet, and that the plaintiff's building, which was three stories high, had windows looking out upon this vacant space southwardly. There was only

one stack of chimneys in the old building on the defendants' lot, and this stood within the kitchen part, on the line of the front part, there being one fire-place on the eastern and another on the western side of the chimney. The passage-way on the south side of this old building was open above, and it passed round the rear of the building on the defendants' land, to the plaintiff's house.

In 1823, Bordman senior took down the old building on his lot, and put up a new building, and extended his new building about six feet deeper (further west) in the rear, than the old building, and also made it wider by extending it several feet further north towards the plaintiff's building, than the chimney in the old building taken down, and so as to cover the vacant space before mentioned, to within one or two feet in width, in the widest part thereof, of the plaintiff's building, and running to a point. The new building was three stories high in this part. The new building narrowed the passage-way leading from the street and entirely covered it over on the top, instead of leaving it open above as it previously was.

A witness testified that he had known both lots as early as 1775, and that the vacant space between the buildings had always, previously to the erection of the new building, been used by the owners and occupiers of the plaintiff's estate, for light and air, and had always been kept open and free for them, and that the windows in the plaintiff's house were ancient windows, receiving light and air from this vacant place These windows were much darkened by the new building.

The judge instructed the jury, that the owner of the defendants' lot had the right to extend his building as far back west as he pleased, provided he did not go any further north ; that the plaintiff was entitled to recover such damages as he had sustained by his windows being darkened in consequence of the new building being placed on the vacant space further north than the old building ; and, as to the passage-way, that all the reservation in the deed is answered by giving the plaintiff a passage-way as convenient as it was when the reservation was made ; that if the present passage-way was not so wide as t was before, and was not open above, yet if it was as conven

ient as before, it would be no ground of damages, but that the defendants, or those under whom they claim, had no right to narrow or cover the passage-way so as to cause serious inconvenience to the owners and occupants of the plaintiff's estate, who have a right to a passage-way substantially as convenient as it originally was.

The jury returned a verdict for the plaintiff, which verdict the defendants moved to set aside.

In another action of the case for a continuance of the nuisance, tried before *Wilde* J. at November term 1834, the plaintiff introduced the testimony of many witnesses, who proved the same state of facts as was shown in the first case ; and in addition it was proved, that before the old building on the defendants' lot was taken away, the back part of the ground was used as a garden, and that the garden fence ran from north to south across the defendants' lot to the plaintiff's lot, which fence stood near where the westerly wall of the defendants' building now stands, and that the passage-way across the defendants' lot as it was formerly used, was east of that fence, and is now covered by this building. The lower part of the plaintiff's building, fronting on the street, has been for many years used for a shop, and the other part for a dwellinghouse. It was proved by witnesses who had been familiar with the messuages for the last fifty years, that the passage-way in question was the principal and only passage-way to the plaintiff's house, and that during that time it had been constantly used by the occupants for passing in and out to Washington street and carrying, with wheelbarrows or handcarts, wood, furniture, &c. without interruption or objection, until the interruption occasioned by the new building on the defendants' lot.

The plaintiff insisted, that by the true construction of the reservation in the deed to Tew, the defendants were restrained from erecting any new building further north towards the plaintiff's lot, than the line of the back of the old chimney, and the jury were so instructed ; but the defendants contended that they should have been instructed, that it only restrained the defendants from building further north than the

line in continuation of the north side of the kitchen part of the old building on the defendants' lot, until that line intersected the plaintiff's southern line.

The plaintiff then insisted, that he was entitled to the passage-way as formerly located over the yard of the defendants, and that the defendants had no right to erect a building on that part of the yard used before as a passage-way, although they left another space open for a passage-way still further west, increasing the distance to the plaintiff's premises ; but the defendants insisted that they had a right to give the plaintiff a passage-way over any part of the rear of their lot, and that they had a right to build from the street backward towards the western end of their lot, to any distance, leaving the plaintiff a sufficient and convenient passage-way on the southern and western sides of their building.

The jury were instructed, that the plaintiff was entitled to have a passage-way across the yard and ground of the defendants, and that the defendants had no right to extend their building backwards so as to cover the passage-way, leaving the plaintiff a passage-way in the other part of their lot still further west.

The jury returned a verdict for the plaintiff.

S. *Hubbard* and *W. Phillips*, for the defendants.

*Fletcher* and *Cooke*, for the plaintiff.

*Per curiam.* The questions in this case turn upon the construction of the provisions in the deed from Atherton Hough to Henry Tew. The clause respecting the passage-way is clearly the reservation of an easement for the use of the land which Hough retained, and it became appurtenant thereto, and passed with that land in subsequent conveyances.

The plaintiff complains of an interruption of the part of this passage-way which leads from Washington street towards the west. It appears that this part has been narrowed, and arched over, and rendered darker and less convenient. We are satisfied that a convenient right of passage-way was reserved, but that the width was not fixed. And this was so ruled at the trial. The jury were instructed, that so far as the plaintiff had suffered inconvenience from the alteration, he was entitled to recover damages ; and this was correct

Atkins
*v.*
Bordman.

*March* 13th
1835.

*June* 22d,
1835.

Another ground of complaint was, that a part of the bu'ld ing on the defendants' lot had been extended too far to the north.    The expression in the deed is, " that whensoever the said Henry Tew, his heirs or assigns, are minded to make or add any addition of building backward, he or they shall only make the breadth to extend equal with the breadth of the back of the chimneys of said tenement hereby granted."   This language is loose and indefinite, but it must have had some meaning ; and we think it means that the grantee should not extend his building further north than the chimney.    The defendants' building was extended further north, and the rights of the plaintiff were violated.    And so far as there was an obstruction to light and air, by reason of the building's being thus placed, the plaintiff is entitled to damages, according to the instruction to the jury.

A question was made, whether the restriction in regard to building applied to a new building, or only to an extension of the old one.    The expression in the deed is indefinite, but we think it applies to a new building.    And it could make no difference to the grantor, whether a new building or an addition to the old one, caused the obstruction to his light and air.

In regard to the right of way across the defendants' yard, we have had more doubt.    It appears that the new building was carried further west than the old one, and so the plaintiff is obliged to go back about six feet further than he formerly did.    The grantor reserves a passage-way over the yard or ground of the messuage conveyed.    But this is to be taken in connexion with the provision, that the grantee should have a right to make an addition backward.    He is restricted as to the width of his building, but not as to the extension of it towards the west ; and we think that he had a right to build further towards the west, leaving a suitable passage-way across the yard or ground.  The view of the judge on the trial of the second action was erroneous on this point, and the verdict is set aside.

The plaintiff brought a third action, which was tried before *Wilde* J. in 1836, for a continuance of the nuisance.

The writ contains five counts, the first of which is upon the plaintiff's prescriptive title to the enjoyment of the easements,

and the others are upon his right to the enjoyment of them generally, without setting out any other title than possession in the plaintiff.

In order to maintain the issue on the part of the plaintiff on the first count, a witness was produced, who testified that he had known both messuages for more than fifty years ; that the building on the plaintiff's lot was a very ancient one, and that the external part of it, as to doors and windows, now remained in the same state as when he first knew it, except that the plaintiff had cut out one window ; that the buildings on the defendants' lot were very ancient and remained without alteration until taken down by Bordman senior ; that the plaintiff's house was three stories high, and that the kitchen part of this old building was very low, so that the plaintiff's windows in his second and third stories overlooked it ; that the old passage-way was, at its entrance on Washington street, at least five feet six inches wide, including the posts, and that the gate was at least four feet ; that the passage-way ran by the land of one Hewes ; that in running westerly, it widened until it came to the door in the old building on the defendants' land, where there was a jog and where the space was about nine feet ; that after passing this jog the passage-way was five feet and that as it still continued running westerly, it widened a little until it came to the southwest corner of the old kitchen, where it turned nearly at a right angle, running northerly along by the westerly end of the kitchen, through another gate opposite to the door of the plaintiff's house ; that the yard west of the kitchen and over which the passage-way went, was in width about twelve feet, and beyond this yard, on the west end of the lot, was the garden, separated by a fence ; that the new building covered over the passage-way, on the south side, by an arch, built over and resting on a wall built to support it, on the south side of the passage-way ; that the new building had been extended about six feet further back than the old one, thereby increasing the distance from Washington street into the plaintiff's door, about twelve feet ; and that by extending the new building further west and raising it higher than the old one, the plaintiff's light and air were materially obstructed.

It appeared that the distance of the defendants' building (as

altered since the decision in the former cases' from that of the plaintiff, is between six and seven feet, opposite to a part of the windows to which the complaint relates, and that opposite to the others the distance is a little greater ; and that tne plaintiff's building, when used formerly exclusively as a dwel linghouse, had a door on Washington street.

The evidence introduced by the plaintiff was ruled to be s ifficient to support his prescriptive title, unless there was something to control it ; and the defendants thereupon read in evidence the title deeds of both estates.

The judge instructed the jury, that upon the evidence, the defendants had a right to extend their building as far to the westward as it now stands ; that they had a right to build back westward to any extent, leaving a sufficient passage-way across their lot for the convenience of the plaintiff ; and as to the height of the building covering the same ground as the old kitchen, and extending further west, that the defendants had a right to raise it to any height they might choose.   Whereas the plaintiff contended, that there was no provision in the deed inconsistent or irreconcilable with the prescriptive rights claimed by him, or if there were any doubt as to the true construction of the deeds, the prescriptive use and enjoyment of the easements for upwards of a century, ought to control such construction, and secure to him the title to the enjoyment of the easements as claimed, without reference to the deeds.

In regard to the passage-way, the plaintiff contended that he had a right to the use of it, open to the sky, according to the lines of the southern and western walls of the old building on the defendants' lot.

The judge instructed the jury, that under the provisions in the deeds the defendants had a right to extend their building westwardly, and the plaintiff was not entitled to any damage on account of the alteration of the passage-way from this cause ; and as to arching over a part of the passage-way, that if this did not occasion any inconvenience, by darkening it or otherwise, in respect to the uses for which it was reserved, the plaintiff would not be entitled to any damage on this ground, but that on this point the jury might assess separate damages ; and in regard to the breadth, that the defendants

were bound to maintain a passage-way equal in breadth to the distance between the old gate-posts, and otherwise convenient for the uses for which it had been reserved ; and that if the passage-way was made narrower than the defendants were bound to maintain it, the plaintiff would be entitled at least to nominal damages on this account, though it might be as good as the old one.

The jury found a verdict for the plaintiff for the nominal damage of one dollar, on account of the passage-way's being arched over.

The plaintiff moved for a new trial.

*Choate* and *Cooke* supported the motion.    The plaintiff establishes a right of way by a strict technical prescription ; by a user, apparently adverse, for forty years ; and the way so established is commensurate with the user.   *Kent* v. *Waite*, 10 Pick. 138 ; *Hart* v. *Chalker*, 5 Connect. R. 315 ; *Doe* v. *Reed*, 5 Barn. & Ald. 232 ; *Ackerman* v. *Shelp*, 3 Halsted, 131.   The defendants produce a deed made before time of memory, to defeat this immemorial user, but in order to affect a prescriptive title, the deed must be within time of memory. 17 Vin. Abr. 270, *Prescription, M*.   Where there is a larger user than a deed before memory would allow, a larger subsequent grant is to be presumed.   *Addington* v. *Clode*, 2 W. Bl. 989.   An older grant prevents a right by prescription, only where it gives the right permissively to the same limits. [*Wilde* J.   There was no evidence that the passage-way was used for things which would not pass through the gate.   The point of the user being larger than the reservation, was not made at the trial.]

The place for the way across the defendants' lot, was indicated by a use of the way for more than a century, and this construes the reservation.   If the defendants are permitted to alter this passage-way now, they may do so at any time hereafter ; which would be inconvenient.   *Wynkoop* v. *Burger*, 12 Johns. R. 222 ; *United States* v. *Appleton*, 1 Sumner, 500, 503 ; *Codman* v. *Winslow*, 10 Mass. R. 146 ; *Jones* v. *Percival*, 5 Pick, 485 ; *Russell* v. *Jackson*, 2 Pick. 578.

The passage-way from Washington street was defined by the deed of Hough to Tew, but it has been narrowed in vio-

*Atkins*
*v.*
*Bordman.*

*March 13th*
*1838*

Atkins
*v.*
Bordman.

lation of the plaintiff's rights, by the erection of a wall on the southerly side of it.

The plaintiff's right to light and air depends entirely on prescription. The deed restrains the defendants building further north, but contains no provision as to the height to which they may build ; so that in regard to this the parties are eft to the principles of the common law.

*S. Hubbard* and *W. Phillips*, for the defendants. When a deed is shown, it supersedes the presumption of a deed for the same thing. 3 Stark. Evid. 1217 ; *Rex* v. *Hudson*, 2 Str. 909. There being here a grant and a use, the question is how they shall be interpreted. The law regards the object of a grant. The plaintiff and his predecessors have had the use of our garden, for light and air, for a century, but this gave him no right to have it remain open. The question is, how much of the use belongs to the easement. *Martin* v. *Goble*, 1 Campb. 320 ; *Compton* v. *Richards*, 1 Price, 27 ; *Hughes* v. *Keme*, Yelv. 215 ; *Back* v. *Stacey*, 2 Carr. & P. 465 ; *Rex* v. *Lloyd*, 1 Campb. 260, 262, note. We rely on the written stipulation. We can limit the right to the deed, although if there had been a prescription merely, the plaintiff might have had a larger right.

The passage-way from Washington street is precisely where it was, the wall being even with the inner side of the gate-post. The object of the stipulation in the deed, was to reserve a passage-way equal in width to the entrance between the gate-posts, and the vacant space beyond that width is no more a part of the passage-way, than the whole lot would have been in case it had been vacant. And as to arching the passage-way, if the plaintiff has a convenient way, it is immaterial to him what use we make of the space above it. *Jackson* v. *Allen*, 3 Cowen, 220.

The deed gives the defendants a right to extend their building backward, and this must necessarily affect the passage-way across the lot. The defendants are bound only to leave a convenient passage-way. *Russell* v. *Jackson*, 2 Pick. 574.

The deed does not restrict the defendants from building to any height which they may think fit. In order to conform to the decision of the Court, they cut off the northern part of their

building, so that the space between the plaintiff's and the de-
fendants' buildings is now about seven feet.   This, in a pop-
ulous city, is a reasonable space for light and air, indepen-
dently of any deed.

MORTON J. delivered the opinion of the Court.   The
plaintiff claims damage for the *continuance* of a private nui-
sance.   Two actions for the same nuisance have heretofore
been determined by this Court.   The cases were ably argued
and duly considered.   Most, if not all, of the questions now
discussed, were then determined, and upon a reëxamination of
them, we can perceive no reason to change our opinions upon
any of the points then adjudicated.   Nor can we discover that
the facts disclosed upon the last trial, materially differ from
those presented on the two former ones or raise any new ques-
tions of law.

The mode of conducting the trial was somewhat different.
Evidence formerly introduced by the plaintiff was now intro-
duced by the defendants, but the result was the same, and we
cannot perceive that this change in the arrangement presented
the questions in any new aspects, or can have any legitimate
influence upon the legal rights of the parties.   Their titles to
their respective estates, the extent of those estates, and of
their privileges and appurtenances, appear to be the same and
to rest upon the same basis as before.

On the former trials the plaintiff traced his own and the de-
fendants' titles to their respective estates ; and by introducing
the title deeds, showed exactly the extent of the privileges re-
served to his own, and the servitudes imposed upon the de-
fendants'.   But in the last he undertook to establish his title to
the easements claimed, by proof of an immemorial enjoyment
of them.   There can be no doubt that his occupation has been
long enough to prove a prescription.   And it cannot well-be
questioned that the prescriptive title thus established, being
measured by the use, would be different and somewhat more
extensive than the record title.   And he now claims to recover
upon and according to the extent of this prescription.

The defendants, in tracing their titles, show that previous
to 1703, the estates of both parties were holden by the same
individual.   At that time the one part could claim no prescrip-

tive servitude over the other.   In that year, Hough, who owned the whole, granted the south half to Tew, and having described an existing gate and passage-way, made the following reservation ; *reserving to himself, his heirs and assigns, free liberty of ingress, egress, and regress through and upon said gate and passage-way for carrying and re-carrying of wood or any other thing through the same and over the yard or ground of the said messuage granted, into and from the housing and land of the said Hough, adjoining, for the use and accommodation thereof.*

This reservation clearly shows the origin of the easements, and entirely explains the nature of the occupation.   Deeds sometimes, by reciting or otherwise recognising existing rights, may be used as evidence of prescription.   Although this deed recognises the existence *de facto* of a gate and a travelled path, yet it impliedly negatives the legal existence of any right of way.

We think that the plaintiff's rights depend entirely upon the construction of the deed to Tew.   This we have heretofore settled.   We do not mean that the holding of these easeme ts by reservation or grant, would form any obstacle to the acquisition of others upon the same land by prescription or any other legal mode.   Nor do we doubt that the same easements might be enlarged by prescription as well as by express grant.   If the way or liberty of passing here reserved for foot passengers and for particular purposes, had been used for forty years and upwards for carriages, it would unquestionably be good evidence of a carriage-way by prescription, notwithstanding the origin of the way.

But when the occupation is consistent with the grant or reservation, it must be presumed to be under and in pursuance of it and not adverse to it.   This obvious and unquestionable principle applies to this case.   All the uses of the easements are consonant with the terms of the reservation in the deed, and must be explained and limited by them.

The right of way, from Washington street to the rear of the defendants' buildings, seems to be definite and certain.   The use of it, as it existed in fact from the date of the reservation to the time of the trial, has been satisfactorily ascertained.   It

was then uncovered. No right to cover it was granted. The jury have found it to be darkened and injured by the arch over it and have assessed damages for the injury. Of this there can be no complaint.

But the liberty to pass across the defendants' lot from the south side of it to the plaintiff's buildings on the north side of it, is less definite and certain. And in relation to this, the plaintiff's prescriptive title might, unexplained, stand on a different ground and admit of a different construction from the record title. Forty years' occupation of the way in a particular direction might establish a prescriptive title to it in that precise place and direction. But the introduction of the deed explains the possession, and rebuts any presumption which might arise from it. The continued use of the way was authorized by the deed. The owners of the defendants' estate had no right to object to it. But it was most clearly a possession in conformity with and under the reservation. An enjoyment of a right by virtue of the deed for any length of time, could not give other rights than those secured by the deed. This defeats the plaintiff's prescriptive claim and brings us back to the construction of the instrument.

This, while it reserves to the owners of the plaintiff's estate, a liberty to pass over the yard or ground of the owner of the defendants' estate, also, and in the same clause, secures to the latter the right to extend his buildings *backwards*. These two clauses placed in the instrument in the nearest juxtaposition, must be construed together, and made to conform to each other. Until the owners of the defendants' estate were " *minded to make or add any addition of building backward*," the owners of the plaintiff's estate might well exercise their liberty of passing in the nearest and most convenient manner. But when the former choose to exercise this right, the latter must of course take a more circuitous and less convenient way to get to his house. And the suspension of this right to build for a century, and the continued use of the direct way across the yard for the same length of time, would not add to or diminish the legal rights of either party.

Whether the exercise of this power by the defendants in the erection of buildings, leaving to the plaintiff a particular pas-

Atkins
*v.*
Bordman.

sage-way, may not so locate and fix the right of way as to deprive either party of the power of making further changes, is a question upon which we are not now called upon for an opinion.

The complaint for darkening the plaintiff's windows, in our opinion, cannot be sustained. This also depends upon the construction of the same deed, and was settled in the former cases. The owners of the plaintiff's estate, when he granted the defendants' estate, imposed restrictions upon the latter and made a conventional arrangement as to the manner in which the owners of it should build. These restrictions and stipulations are annexed to the estate and run with it. They must therefore restrain and regulate the rights of the successive owners. These stipulations having fixed the limits beyond which, towards the plaintiff's estate, no building should be erected, but not having fixed the height to which the building might be built, no such restrictions can now be imposed. *Expressio unius, exclusio alterius.*

*Judgment on the verdict.*