## JOHN DOLLOFF *versus* ZEBEDIAH HARDY.

If the proprietors of common lands, at a meeting regularly called, establish by their votes a mode of calling their future meetings, under the authority given by law for that purpose, the right of calling their meetings in manner provided by the statute, by application of the requisite number of proprietors to a justice of the peace, still remains; and meetings may be legally called in either of the modes.

If a meeting of the proprietors be called on the application of persons calling themselves proprietors, and the meeting takes place, and no objection is made by any one at the meeting, that it was not rightfully called, and the records of the meeting show that the proprietors met on such application; the legality of the meeting cannot afterwards be controverted, on the ground that the applicants were not all, or a sufficient number of them, proprietors.

And where the person to whom a warrant from a justice of the peace to call a meeting is directed, makes his return thereon generally, that he had notified the proprietors " by posting notice in said town of R. and causing the same to be published in" two papers named, " as the law directs ;" and the proprietors meet at the time and place, and cause their corporate acts to be entered on their records, and the proceedings are ratified at a subsequent legal meeting; it cannot afterwards be objected, that the meeting was not legally notified.

If a sale of land of such proprietors be made through the agency of a committee and their doings be accepted at a meeting of the proprietors, but the meetings at which the committee was chosen and at which their report was accepted were not legally called, still if those proceedings were ratified at a subsequent legal meeting, the ratification would give validity to the doings, and would relate back to the time of the transactions, and would have a complete retroactive efficacy; no rights of third persons having intervened.

When the clerk of a proprietors' meeting makes minutes on a paper of the proceedings of a meeting, but dies before he has regularly entered the same upon the book of records, the proprietors' clerk, subsequently chosen, may rightfully make up the record from such minutes.

In an action of trespass *quare clausum* by one claiming title under the proprietors of common lands, the defendant who shows no title whatever, cannot defeat the action by raising objections, that the plaintiff acquired no title by reason of informalities in the mode of proceeding of the proprietors in making the grant.

The proprietors of common lands may convey the common estate by vote. And this may be done by appointing a committee to make the sale, and accepting their report of having done so.

TRESPASS *quare clausum.* The case came before the Court

upon an agreed statement of facts, wherein it was agreed, that either party should put into the case any records of the proprietors of New Pennycook, now Rumford, in which the land lies. The facts appear at the commencement of the opinion of the Court.

The return signed by the person to whom a warrant to call a meeting was directed, to which objection was made, was in these words : —

"Rumford, January · 26, 1828. Pursuant to the foregoing warrant, to me directed, I have notified the proprietors of said Rumford to meet at the time and place and for the purposes above mentioned, by posting notice in said town of Rumford and causing the same to be published in the Maine Gazette, published at Portland, and Oxford Observer, published in the county of Oxford, as the law directs."

The vote of the proprietors, appointing the committee was : "to choose a committee to make sale of the common land at private sale."

The vote of the proprietors, accepting the report, was : —

" Voted to accept the report of Francis Keyes, Kimball Martin and Stephen G. Stevens, their committee, which is as follows." The whole report of the committee is then set out, in which the committee say : — " We have sold to John Dolloff the following parcel of land, bounded beginning at," &c. particularly describing the land mentioned in the plaintiff's declaration, and stating that they had taken the note of the plaintiff to the proprietors for the amount of the consideration.

*Howard & Shepley*, for the plaintiff, contended that the nonsuit should not have been ordered, as the plaintiff had shown good title in himself against all persons ; and certainly against the defendant, a mere trespasser, without pretence of claim under any proprietor.

The first meeting of the proprietors was regularly called under the resolve of Massachusetts granting the land. The old acts of 1712, 1735 and 1753, as well as the Mass. st. of 1784, and the Maine of 1821, c. 43, and Rev. St. c. 85, each provides a mode of calling meetings of the proprietors

Dolloff *v.* Hardy.

of common lands, and each is substantially the same. The proprietors are also empowered to agree upon a mode in which their future meetings are to be called. But the proprietors by agreeing on a mode to suit themselves, do not take away the right to call a meeting in the mode provided by the statute. If it did, then in a case like the present, there would be no mode whatever of calling a meeting, if the clerk should decease. The meetings were therefore legally called.

The proprietors of common lands may convey by vote. When the report of their committee was made, and it was duly accepted by the proprietors, it operated as a conveyance of this lot to the plaintiff. *Pike* v. *Dyke,* 2 Greenl. 213 ; *Williams* v. *Ingell,* 21 Pick. 288, and same, 2 Metc. 83 ; *Adams* v. *Frothingham,* 3 Mass. R. 360; *Codman* v. *Winslow,* 10 Mass. R. 150 ; *Springfield* v. *Miller,* 12 Mass. R. 415 ; *Folger* v. *Mitchell,* 3 Pick. 396.

It is competent to prove by parol, that the oath was administered by the clerk. 2 Greenl. 218 ; 3 Fairf. 234 ; 9 Mass. R. 313 ; 13 Pick. 317.

After the death of the clerk, his records were completed by the new clerk from the minutes of the old one, and were sanctioned by the proprietors as their records. A proprietor could not deny that these were the proprietors' records, and much less a mere stranger, like the defendant.

The defendant sets up no title, but contends, that he can commit the trespass with impunity, because there is, as he supposes, some defect in the plaintiff's title which he can take advantage of, although the proprietors themselves admit it to be good. He has no right to contest the regularity of the proceedings of the proprietors. *Copp* v. *Lamb,* 3 Fairf. 312.

*S. May,* for the defendant, said that the plaintiff has introduced no deed, but relies upon certain votes and proceedings of the original proprietors, to whom the township was granted by Massachusetts, in 1774.

Our objection to the plaintiff's title is — 1. The illegality of the proceedings under which the plaintiff claims. And 2.

The insufficiency of those proceedings, even if legal, to pass any title to the land.

At an adjournment of the first meeting of the proprietors, they agreed upon a mode of calling future meetings. The second and third meetings of the proprietors were not called in the mode they had agreed on. When the proprietors had once agreed upon the manner of calling the meetings, as the law authorized them to do, it was the only way in which a meeting could be legally called. *Evans* v. *Osgood*, 18 Maine R. 213.

But if the proprietors had another mode, at the same time, of calling a meeting under the statute, as they would have had, if they had not agreed upon a different one, still the meeting was not legally called, because there is no evidence that the persons applying for the warrant were proprietors.

Again, the return of the person to whom the warrant was directed does not state such facts as show the meeting to have been called in the manner provided by the statute. He should state the facts, and the Court should determine the law. *Perry* v. *Dover*, 12 Pick. 206.

If the meetings were properly called, the record of the proceedings cannot be received in evidence, because not duly authenticated. No part of the record, which was made up by the clerk from loose papers of another person, is admissible. *Whitman* v. *Pro. Granite Church*, 24 Maine R. 236. The copy of a vote of a corporation is not competent evidence of the vote, unless it be sworn to or certified by some person who is made by law a certifying officer for such purpose. *Hallowell & Augusta Bank* v. *Hamlin*, 14 Mass. R. 178. In the present case, neither the vote choosing the committee, nor that accepting their report, was certified by the person who was clerk at the time of their passage.

In regard to the second question, the votes and proceedings of the proprietors, even if legally before the Court, do not pass the title to the land in question to the plaintiff. The power granted to the committee was a mere authority to bargain and sell. And the committee so understood it, for they

did not attempt to sell. The land, in such case, does not pass without a deed. *Thorndike* v. *Richards*, 13 Maine R. 430 ; *Lambert* v. *Carr*, 9 Mass. R. 185. If towns and proprietors of lands may convey land by vote, the principle does not extend to a committee, authorized to sell. *Codman* v. *Winslow*, 10 Mass. R. 146 ; *Springfield* v. *Miller*, 12 Mass. R. 415 ; *Adams* v. *Frothingham*, 3 Mass. R. 360. The vote of the proprietors is merely an expression of their satisfaction with the doings of the committee, and does not purport to convey the land.

Even the power of proprietors to convey by vote has been called in question. 3 Mass. R. 360; 2 Pick. 425; 10 Pick. 364.

The opinion of the Court, SHEPLEY J. taking no part in the decision, not having heard the argument, was drawn up by

TENNEY J. — The land on which the trespass is alleged to have been committed is a part of the township which now constitutes the town of Rumford, and which in 1774 the legislature of the Province of Massachusetts granted to the proprietors of New Pennycook, and authorized Timothy Walker to call the first meeting, and the proprietors, when met, to agree upon a mode of calling future meetings. The first meeting was held in May, 1779, and the proprietary duly organized by the choice of a moderator and clerk, and adjourned meetings were held from time to time till August 3, 1807, when it was dissolved. At one of these meetings it was voted, that the clerk be directed and fully empowered, upon the request of one sixteenth part of the owners of the township, to call future meetings, by advertising in one of the Boston newspapers. The proceedings of the original meeting under the warrant of Walker and of all the adjournments thereof were duly certified in the records of the proprietors.

From the records it appears that subsequent meetings were called on application of five or more persons, styling themselves proprietors, and held in pursuance of warrants issued by justices of the peace, to persons who were therein directed

to notify the proprietors, and not in pursuance of the mode agreed upon by a vote of the proprietors at a previous meeting. Many of the meetings so called and held, were continued by adjournments from time to time, at which, business touching their interests was done. At one of these meetings, held by adjournment on February 16, 1828, it was voted to choose a committee to make sale of the common land; and at an adjournment of the same meeting, held on Dec. 29, 1828, the committee made report, that they had sold to the plaintiff, the lot on which the trespass is alleged to have been committed, and in consideration therefor, had taken his note for $85, payable in one year, with interest, which report the proprietors accepted. At a meeting called for the purpose, and held Sept. 31, 1846, the doings of former meetings were ratified and confirmed. The warrant for the meeting, at an adjournment of which the sale to the plaintiff was made, and the return of the individual to whom it was directed, are a part of the record of the proprietors, and it is not stated in the return, that the notices were posted in places, which were *public*, or that the same were posted up, and published in the newspapers, *fourteen* days before the meeting, but that such notices were posted up in Rumford, and published in the newspapers named "as the law directs." The proceedings of the meeting and of the adjournments, at which the sale of the land in question, was reported and accepted, down to a time posterior to the sale, were fully entered upon the records by Francis Keyes, the clerk, who the case finds, was qualified by taking the oath, but he died before the dissolution of the meeting, and the proceedings at some of the last adjourned meetings were not entered upon the records; and before its dissolution, Josiah Keyes was chosen clerk to finish the record under the warrant for this meeting, from minutes left by his father, Francis Keyes, the said Francis Keyes being the former clerk, and leaving them unfinished; and the record of that meeting, and its several adjournments was completed and bears the attestation of "Josiah Keyes, clerk."

The defendant admitted, for the purpose of settling the law,

upon the facts reported, that he did the acts complained of; but offered no evidence of right in himself, but insisted that the title to the land was still in the original proprietors.

It is not contended, that the records introduced are not the records of the original proprietors, and that the proceedings were not legal and regular, up to Aug. 3, 1807. But it is urged that all subsequent meetings were illegal, because they were not held in pursuance of an application of one sixteenth part of the owners, to the clerk. The case of *Evans & al.* v. *Osgood & al.* 18 Maine R. 213, relied upon by the defendant, is not in point. In that case the call of the meeting was intended to be according to a method agreed upon by the proprietors, but proved to be defective, and was not according to the mode provided by the statute. By the statutes of 1712, 1735 and 1753, meetings of proprietors of common lands could be called by an application by five or a major part of the proprietors, to a justice of the peace, who could issue his warrant, &c., and they were authorized at a meeting so called, " to agree upon and appoint, any other way or method of calling and summoning meetings for the future, that shall be most suitable and convenient for the proprietors;" and similar provisions are incorporated into the statutes of 1784, and of 1821, c. 43, § 1; and Rev. Stat. of 1841, c. 85, § 1, and 6.

The language of the resolve of 1779, and of the subsequent statutes touching the mode of calling meetings of proprietors of common lands, &c., do not restrict them to the use of the method alone, which they may agree upon and adopt; but on the other hand, the terms used in the provision for calling meetings by application to justices of the peace, are so comprehensive as to embrace cases, when the owners have agreed upon another method; the mode by application to the clerk, could not always be carried into effect, as in the case of his death; and if the construction contended for, by the defendant should prevail, in such an event, the statute has provided no means by which a meeting could be called. It was evidently intended, that the general provision would not cease to be applicable, when another method had been agreed upon.

The objection to the legality of the proceedings of the proprietors because the evidence, that the persons who made application for the meetings, was insufficient to show them owners, cannot prevail. It is certified in the records, that the "proprietors met," under such application, and votes passed ; the application signed by those, styling themselves proprietors, is a part of the record. No objection on this ground was made by any one at the meeting, and no attempt to repudiate or annul the doings for this reason. By records, they have adopted the facts stated in the application, and it becomes a truth, which they cannot controvert.

Again it is submitted by the defendant, that the return of the notice given for the meeting at which the sale to the plaintiff made by the committee was accepted, is too defective to give validity to the proceedings of the proprietors. In the case of *Thayer* v. *Stearns & al.* 1 Pick. 109, where the defect was greater than in the return, which we are considering, the Court say, "when it appears of record, that the meeting has been regularly called ; and the meeting has been held, and the officers chosen at such meeting without any objection on account of a deficiency of warning, we think that any anterior irregularity, provable only by parol, cannot vitiate the choice." In the case from the 12th of Pickering, 206, cited for the defendant, it is said, in the opinion of the Court, "the case of *Thayer* v. *Stearns & al.* is clearly distinguishable from this" "and it is to be recollected that the return now under consideration is much more defective than that." In both of the above named cases, the question arose in actions brought to recover back money, which it was insisted had been illegally obtained as taxes of the plaintiffs. In the case at bar, the person who gave the notice, certifies that he posted and published the notices, and the place, and newspapers in which it was done, as the law directs, are named ; and there is no evidence tending to show that the warning was not in strict accordance with law. By the records, it appears, that the proprietors met at the day appointed, and under the same warrant and notice, many adjourned meetings were held, and there was no dissolution till

June, 1834. The proprietors, who must have known, if there was in fact any want of legal notice, made no objection to the alleged defect, but proceeded with their business, sold and alienated valuable portions of their property upon full consideration paid, and caused their corporate acts to be entered upon their records. Neither the proprietary nor any of its members have interposed any objection to the legality of the warning or the validity of the proceedings, but on the other hand, at a meeting held under a warrant, to the notice given under which, there is no objection, all doings at previous meetings were ratified and confirmed.

The sale to the plaintiff was made through the agency of a committee, and their doings were accepted by the proprietors.

If the committee was not chosen at a legal meeting, or if when their report was accepted, the same objection would apply, a ratification at a subsequent meeting, which was legal, would give validity to the doings of the committee and of the proprietary. The ratification would relate back to the time of the inception of the transaction and would have a complete retroactive efficacy. Story's Agency, § 244.

But it is contended that the proceedings of the proprietors, touching the sale of the land to the plaintiff, are not duly certified, inasmuch as they have not the attestation of the clerk, who was such at the time. The case finds, that the clerk entered upon the records in his own handwriting every thing in reference to the sale ; his death occurred before the dissolution of the meeting, between the times of holding two adjournments of the same meeting. It was not necessary for an attestation until the close of the record of the meeting with all its adjournments. After his death, the proprietors chose a clerk, properly qualified, to finish the records left incomplete. They are now full, and the proprietary cannot object to their truth and are bound by them. It must often happen, that records are left imperfect by the one who was clerk at the time of the transaction recorded. When death, or accident of any kind, leaves the records of a town, a court, or a private corporation in this condition, it is not to be admitted that all the rights

intended to be brought into existence or secured, are to be lost by such occurrences.

But the defendant does not stand in such a relation to the proprietors or to the plaintiff as to authorise the technical objections, on which he relies. The plaintiff is bound only to show that the land was in his possession either actual or constructive, at the time of the alleged trespass, and this rightfully as against the defendant. The proprietor's records disclose the facts on which the plaintiff relies, and both they and he treat them as valid. He has paid the consideration for the land, and they have received it. The defendant is a stranger to these transactions, has no rights to be affected whether they stand or fall ; no claim to the land or to the trees cut by him has he presented. As the case finds the facts, his acts are equally a trespass, whether the land or its possession passed from the proprietors to the plaintiff or not, and in an action like this the wrongdoer cannot set up a title in a third person, without showing some authority or right derived from the owner to justify his acts. He cannot avail himself of defects in the mode of calling meetings of the proprietors, to invade the rights, of those to whom they in good faith intended to sell the land, and then relieve himself from liability by invoking the title of those, who do not claim it for themselves, but by their records assert that they have parted with it to another.

But it is denied, that any interest whatever passed from the proprietors to the plaintiffs, if every step taken by them was legal ; and the case of *Thorndike* v. *Richards*, is relied upon in support of the proposition. When that case is examined it will be found not to conflict with other cases, which fully establish the contrary doctrine ; and it cannot be material, whether the vote of the proprietors, be direct upon the subject, or whether a committee is appointed to make the sale, and they report it so made, and the report is duly accepted. *Adams* v. *Frothingham* 3 Mass. R. 352 ; *Springfield* v. *Miller*, 12 Mass. R. 415 ; *Williams* v. *Ingell*, 2 Metc. 83 ; *Codman & al.* v. *Winslow*, 10 Mass. R. 146.

The evidence on which the plaintiff claims the right to main-

tain the action as against the defendant, shows such a right derived from the proprietors, that the possession must be regarded as constructively in him; this is all that is required; and by the agreement of the parties the nonsuit must be taken off, and the action stand for trial.